**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

AUSTIN BROWN,                                       CASE NO.:  1:17-cv-305-MW-GRJ

      Plaintiff,

v.

LAWN ENFORCEMENT AGENCY,
INC. and MICHAEL TROIANO,

      Defendants.

        _____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      Plaintiff, Austin Brown, moves for Summary Judgment against Defendants,

Lawn Enforcement Agency, Inc. and Michael Troiano, and in support thereof states

as follows:

## I.      INTRODUCTION

      Plaintiff's cause of action is for unpaid Federal and State minimum wages

concerning the pay period for work he performed from December 28, 2017 to

January 3, 2018. *See* Doc. 8 (Amended Complaint), Paragraph 10.  On January 9, 2017,

the regular payday for work performed during that period, Defendants deducted

$162.60 for a uniform charge. *See* Exhibit J (Defendant's Interrogatory Answers),

number 20, at ECF 24-10, p. 6.[1] By making that deduction, Plaintiff's was not paid his

---

[1] Immediately prior to filing this Motion for Summary Judgment, Plaintiff filed a
Notice of Exhibits with Exhibits A – M.  The Exhibits referenced in this Motion are
to the Exhibits attached to that Notice. The Exhibit's docket entries and pages also
are referenced as "ECF 24-\_\_, p. \_\_\_\_".

full Florida or Federal minimum wages for that week on his regular pay date; that failure is a violation of the FLSA, Florida Constitution and the Florida Minimum Wage Act.

## II.   STATEMENT OF FACTS

Defendants operate a lawn maintenance, pest control and construction business. *See* Exhibit J (Answer to First Interrogatories), number 5 at ECF 24-10, p. 2; *see also* Defendant's brochure attached as Exhibit C at ECF 3. It uses trucks in its business and accepts credit cards. *See* Exhibit J (Answer to First Interrogatories), number 17 at ECF 24-10, p. 5; *See also* Exhibits D and E at ECF 4 and 5. Defendant Troiano is the company's President and "responsible for all aspects of the company," including its policies and procedures. *See* Exhibit J (Answer to First Interrogatories), number 23 at ECF 24-10, p. 6. He's also its sales manager.  *See* Exhibits L and M (Request for Admissions), number 16 at ECF 12 and 13, p. 2 and 3, respectively.

Plaintiff worked for Defendants as a "low position" lawn maintenance technician from July 25, 2016 to January 4, 2017. *See* Exhibit J (Answer to First Interrogatories), numbers 2 and 4 at ECF 24-10, p. 2.  He worked mowing lawns, weed-eating and blowing properties with Defendant's equipment.  *Id.*  He also drove Defendants' vehicles.  *See* Exhibits L and M (Request for Admissions), numbers 22 and 23 at ECF 12 and 13, p. 2 and 3, respectively.

During the pay period from December 28, 2016 to January 3, 2017, Plaintiff worked 24.25 hours for Defendants.  *See* Exhibit J (Answer to First Interrogatories),

number 18 at ECF 24-10, p.5; *See also* Exhibit B (pay stub) at ECF 24-2.  On the regular payday for that pay period (i.e. January 9, 2017), Defendants' only paid Plaintiff $83.74 for the 24.25 hours worked during that pay period.  *See* Exhibit G (deposit records) at ECF 24-7.  The reduced pay was due to a $162.60 for a "uniform charge". *See* Exhibit J (Defendant's Interrogatory Answers), number 20 at ECF 24-10, p.6; *See also* Exhibit B (pay stub) at ECF 24-2.

Under the FLSA, 24.25 hours of work would amount to a required minimum wage of at least $175.81 (24.25 x $7.25 Federal Minimum Wage).  Under the Florida Constitution and the FMWA, the required state minimum wage would be at least $195.21 (24.25 x $8.05 State Minimum Wage). Thus, the payment of $83.74 was less than the required federal and state minimum wages.

On January 17, 2017, Defendants paid Plaintiff $93.91 for 9.5 hours of work performed during the pay period from January 4, 2017 – January 10, 2017.  *See* Exhibits H (pay stubs) at ECF 24-8, and Exhibit G (deposit records) at ECF 24-7. January 17, 2017 was the regular pay period after the pay period at issue in this case. *Id.*

On January 19, 2017, Defendants paid Plaintiff $100 of the uniform deduction taken from his January 9, 2017 paycheck.  *See* Exhibit H (pay stub) at ECF 24-8.  The applicable pay period for that $100 payment, as per the paystub itself, was January 4, 2017 thorough to January 10, 2017. *Id.*

### III.   <u>MEMORANDUM OF LAW</u>

To succeed on his claim for unpaid Federal Minimum Wage, Plaintiff must prove each of the following facts by a preponderance of the evidence: First: he was an employee of Defendants and was engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce; and Second: Defendants failed to pay Plaintiff the minimum wage required by law. *See* 11th Circuit Pattern Jury Instruction 4.14 (2013).

    A.  <u>Plaintiff was an employee of Defendants and was engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce.</u>

Defendants admit that Plaintiff was an employee of Lawn Enforcement Agency. *See* ECF 11 (Defendants' Answer and Affirmative Defenses) at Paragraph 1. Although both Defendants denied making more than $500,000 in response to paragraph 9 of the Amended Complaint, they subsequently admitted that Lawn Enforcement Agency made more than $500,000 gross income. *See* Exhibits L and M (Requests for Admissions), number 14 at ECF 24-12 and 13.

Defendants however have constantly disputed that they are an enterprise engaged in commerce covered by the FLSA and have stood by their Second Affirmative Defense claiming such. *See* Doc. 7 (Defendants' Motion to Dismiss/Motion for Summary Judgment) at ECF 11 (Defendants' Second Affirmative Defense) at ECF 11, p.3, and Exhibits L and M (Request for Admissions) number 12

at ECF 24-12 and 13[2]. For example, Defendant's Motion to Dismiss/Summary Judgment (ECF 7), argues at page 2 that "At all relevant times LEA was not an enterprise engaged in business defined by 29 U.S.C. 203(s)(1)(A) and; therefore, the FLSA's pay requirements do not apply to LEA or its employees." Defendants even attached an Affidavit from Michael Troiano as Exhibit A to its Motion to Dismiss/Summary Judgment swearing essentially to the same thing at paragraphs 4 and 6 of that affidavit. At page 9, Defendant argues that "the supplies that they use in their employment are outside of the stream of commerce by the time they use them, because they are purchased locally." In support of that claim, Defendant cites bad law stating:

> *Polycarpe v. E & S Lanscaping, Inc.* 572 F. Supp.2d 1318 (S.D. Fla. 2008) (holding that the materials, supplies, and equipment used by the plaintiffs that were purchased by the defendant from local retailers and wholesalers "had come to rest, i.e., any journey of an interstate nature had ended and were then utilized to transact the landscaping business, which was entirely locally in nature.")

ECF 7 at page 10.

Defendants failed to disclose in their Motion to Dismiss/Summary Judgment at ECF 7 that *Polycarpe v. E & S Lanscaping, Inc.* 572 F. Supp.2d 1318 (S.D. Fla. 2008)

---

[2] Denying that Defendants regularly employed two or more employees for the relevant time that handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' business an enterprise covered under the Fair Labor Standards Act. These same arguments against enterprise coverage are, therefore, expected in response to this summary judgment motion.

was appealed and the 11th Circuit reversed and remanded it in *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010). Once remanded, the Southern District in *Polycarpe v. E & S Landscaping Serv., Inc.*, 821 F.Supp.2d 1302 (S.D. Fla. 2011) held that enterprise coverage existed finding "that the trucks driven by Plaintiffs and other employees of the Defendants to transport themselves and the lawn equipment from client to client qualify as 'materials' that have traveled in commerce to trigger enterprise coverage under the FLSA." Defendants at EFC 7, page 10-11, also cited *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F.Supp.2d 1312, (S.D. Fla. 2008) saying it is "[l]ike the defendant in *Bein-Aime*." However, as with *Polycarpe., Bien-Aime* is also bad law as it was vacated by the 11th Circuit in *Polycarpe v. E&S Landscaping Service, Inc.*, 1616 F.3d 1217 (11th Cir. 2010).

As in *Polycarpe v. E & S Landscaping Serv., Inc.*, 821 F.Supp.2d 1302 (S.D. Fla. 2011), Defendants admit that it used vehicles in its business that are manufactured outside Florida and that Plaintiff drove vehicles during his employment that were manufactured outside Florida. *See* Request for Admissions numbers 1-3, 9, 10, 18-23 at ECF 24-12 and 13. Defendants also admitted their business uses pest control products from other states in their normal business – specifically from Texas and North Carolina. *See* Exhibit J (Response to First Interrogatories), number 14 at ECF 24-10, p.4-5. Thus, Defendant is covered by the FLSA (at a minimum) via enterprise coverage just like in *Polycarpe.*

Defendants also admitted that they obtain, exchange, and sends/receives funds to and from outside of the State of Florida, use telephonic transmissions going outside of the State of Florida to conduct business, and transmit electronic information through computers, the internet, via email, and otherwise outside of the State of Florida. *See* Exhibits L and M (Request for Admissions) number 13 at ECF 24-12 and 13; *see also* Exhibit D (debit authorization) at ECF 24-4. Those are done "daily". *See* Exhibit J (Response to First Interrogatories), number 17 at ECF 24-10, p.5; *See also Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (An employee who regularly uses the instrumentalities of interstate commerce in their work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel, is engaged in interstate commerce). The same affidavit Michael Troiano filed at Doc. 7 in support of Defendants' Motion to Dismiss/Summary Judgment falsely states at paragraph 7 that "the work we do, the funds we exchange and obtain and the communications we have are inside the State of Florida." Defendants' answers to the request for admissions and its sworn interrogatory answers prove that affidavit to be false because Defendant regularly and recurrently uses credit card transactions in its business.

Under the "good law" version of *Polycarpe* and combined with the fact they made more than $500,000 gross, Defendants are indisputably engaged in interstate commerce. Thus, their denial of the allegation in the complaint, their second affirmative defense, their previously filed (and denied as moot because Plaintiff

choose instead to amend his complaint) Motion to Dismiss/Summary Judgment, and the Affidavit attached to the Motion to Dismiss/Summary Judgment motion are without merit.

B. <u>Defendants failed to pay Plaintiff the minimum wage required by Federal law on scheduled paydays.</u>

"The FLSA requires—and the Supreme Court has recognized approvingly—that an employee receive on time payment for work performed. The court understands such timeliness to mean that an employer pays an employee on the regularly scheduled paydays." *Martin v. U.S.,* No. 13-834C (United States Court of Federal Claims, July 31, 2014). *See also Moreno v. United States*, 82 Fed. Cl. 387, 404 n.37 (2008) ("[A] cause of action to recover those wages plus liquidated damages under the FLSA was available to plaintiffs immediately following those pay periods, when it was clear that their paychecks included neither overtime pay nor liquidated damages."); *Corrigan v. United States*, 68 Fed. Cl. 589, 592–93 (2005), aff'd, 223 F. App'x 968 (Fed. Cir. 2007). The regular scheduled payday for the 24.25 hours of work at issue in this case was January 9, 2017. *See* Exhibit B (pay stub) at ECF 24-2*;* Exhibit G (deposit records) at ECF 24-7. The next regularly scheduled payday was January 17, 2017. *See* Exhibits H (pay stubs) at ECF 24-8, and Exhibit G (deposit records) at ECF 24-7. Defendants did not pay Plaintiff his minimum wages on either the applicable or next regularly scheduled payday.

1. <u>FLSA claims accrue when employees are not paid properly on their regularly scheduled paydays.</u>

Courts recognize that the "usual rule" is that a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid. *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988). Accordingly, the statute of limitations begins to run on the day of that pay period. As stated in 29 CFR 790.21(b) (Time for bringing employee suits) provides in part:

> The courts have held that a cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidated damages "accrues" when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends.

*Citing Reid v. Solar Corp.,* 69 F. Supp. 626 (N.D. Iowa); *Mid-Continent Petroleum Corp. v. Keen,* 157 F.2d 310, 316 (C.A. 8); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945); *Rigopoulos v. Kervan,* 140 F.2d 506 (C.A. 2).

Here, Plaintiff was indisputably not paid his minimum wages for the work he performed from December 28, 2016 to January 3, 2017 on his regularly scheduled pay date although Plaintiff worked 24.25 hours for Defendants.[3] *See* Exhibit J (Answer to First Interrogatories), number 18 at ECF 24-10, p.5; *See* also Exhibit B (pay stub) at

---

[3] The workweek as a whole is the relevant unit for determining compliance with the minimum wage requirement. *Walters v. American Coach Lines of Miami, Inc.*, 569 F. Supp.2d 1270, 1300 (S.D. Fla. 2008)(citations omitted); *see also Johnson v. RGIS Inventory Specialists*, 554 F. Supp.2d 693, 710 (E.D. Tx. 2007)(stating that "the workweek is the proper standard for determining compliance with the minimum wage requirements"); *Munrow v. PartsBase, Inc.*, 2009 WL 413721, at *2 (S.D. Fla. Feb. 18, 2009)(stating that "[t]he FLSA generally requires the payment of at least the prescribed minimum wage each workweek").

ECF 24-2.  Under the FLSA, 24.25 hours of work would amount to a required wage of at least $175.81 (24.25 x $7.25 Federal Minimum Wage).  After credit for the $83.74 paid to Plaintiff on January 9, 2017 and $100 paid on January 19, 2017, Plaintiff was still due $92.07 ($175.81 – $83.74 = $92.07) under the Federal Minimum Wage. With the addition of liquidated damages of $92.07, that amount grows to $184.14.  $184.14 – the $100 paid on January 19, 2017 equals $84.14.   Thus, Plaintiff is still due $84.14 under the FLSA for Federal minimum wages and liquidated damages.

> 2.   <u>The fact that the delay in payment was roughly two weeks does not change the conclusion that Defendants violated the FLSA.</u>

Decisions repeatedly endorse the principle that payments due under the FLSA must be made on the regularly scheduled payday. *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) (overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day) (*quoting Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir. 1943) and citing other cases for the same proposition); *Pascoe v. Mentor Graphics Corp.*, 199 F.Supp.2d 1034, 1062 (D.Or. 2001) ("Although the FLSA does not explicitly require that wages be paid on time, courts have long interpreted the statute to include a prompt payment requirement. . . . Therefore, this court concludes that, just as under the FLSA, Oregon's minimum wage provision is violated if the minimum wage is not paid by the next regular pay date, or in this case, by June 15, 2000."); *Calderon v. Witvoet,* 999 F.2d 1101, 1107 (7th

Cir.1993) (employer's retention of "any part of the minimum wage past the end of the

pay period violates the FLSA" ); 29 C.F.R. § 531.35 (employer may not reduce the

wage below the statutory minimum to collect a debt to the employer); *accord Brennan v.*

*Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1369 (5th Cir.1973); *Brooklyn Sav. Bank v.*

*O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (Liquidated damages

provision of FLSA "constitutes a Congressional recognition that failure to pay the

statutory minimum <u>on time</u> may be so detrimental to maintenance of the minimum

standard of living ' necessary for health, efficiency, and general well-being of workers'

and to the free flow of commerce, that double payment must be made in the event of

delay in order to insure restoration of the worker to that minimum standard of well-

being" )(emphasis added).

 The belated payment of $100 on January 19, 2017 was an intentional act by

Defendants and was not even corrected on the following pay day. Defendants

intentionally deducted the "uniform fee" during the week in question and, as a direct

result, Plaintiff was not paid minimum wages for that workweek.  *See* Exhibit J

(Answers to Interrogatories), number 20 (admitting the deduction of "Normal taxes

and weekly uniform rental of $2.60, Initial uniform fee of $ 160 for final uniform

charge. A payment in the amount of 100.00 was paid back to the employee for next

day return of uniforms.") at ECF 24-10, p.6. No extra time was required to calculate

the hours worked by Plaintiff that week or his minimum wages – it's all stated on the

initial January 9, 2017 paystub.  *See* Exhibit B at ECF 24-2. Moreover, the $100

payment did not come until 16 days after the end of the workweek in question, even after Plaintiff's next pay date which was on January 16, 2017. *See* Exhibit G (deposit records) at ECF 24-7.  Because payment to Plaintiff was not made on the regular payday, or even the subsequent payday for that matter, Plaintiff's FLSA claim accrued and liquidated damages are strongly presumed.

### 3.   Liquidated damages are both strongly presumed and a matter of law for determination by the Court.

Employers that violate the FLSA's provisions are liable for the shortfall in timely minimum wage or overtime payments and an additional amount equal to that shortfall as liquidated damages. 29 U.S.C. § 216(b). Although the determination of willfulness for purposes of establishing the statute of limitations is an issue of fact for the jury, the determination of good faith for purposes of establishing liquidated damages is a question of law for the Court to decide. 29 U.S.C. § 260 (2006) (". . . if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title").  *See also Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1155 (11th Cir. 2008) (court's domain to determine good faith as a question of law, not the jury's).

Courts may award less than full liquidated damages only if the employer shows
both that it acted "in good faith and that [it] had reasonable grounds for believing that
[its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. There is a
"strong presumption under the statute in favor of doubling." The Fourth Circuit in
*McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 245 (4th Cir. 2016) explained
the policy behind imposing liquidated damages:

> This provision for liquidated damages is an additional penalty on non-
> compliant employers. If an employer were instead liable for only unpaid
> wages and overtime pay, it might roll the dice by underpaying employees,
> reasoning all the while it would be no worse off even if the employees
> eventually prevailed in court.

Because an employer bears the "substantial burden" of establishing the
affirmative defense under § 260, the award of liquidated damages is the norm,
and the denial of liquidated damages is the exception. *See Mayhew v. Wells*, 125
F.3d 216, 220 (4th Cir. 1997) (The award of liquidated damages "[is] the norm
for violations of [section] 7 of the [FLSA].").

        a.     <u>Defendants cannot prove they acted in good faith.</u>

When asked in an interrogatory to explain all facts supporting its good faith
Defense, Defendants merely stated "Please see documents previously provided" and
simply regurgitated the general statement that they acted in good faith. *See* Exhibit K
(Answer to Second Set of Interrogatories) at ECF 24-11. That mysterious reference to
documents provided and the unsupported claim of good faith do not satisfy
Defendant's "substantial burden" of proving its acts were both in good faith and

reasonable.  *See Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir.

1979) ("We do not believe an employer may rely on ignorance alone as reasonable

grounds for believing that its actions were not in violation of the Act.").  Moreover,

an examination of those documents produced by Defendants shows no clue of any

good faith defense. Defendants' bare assertions cannot carry their "substantial

burden" of demonstrating good faith and reasonableness.

> b.   Defendants also cannot prove they acted with a reasonable
>      basis for believing that they were complying with the
>      FLSA.

Not only must they carry their substantial burdens to prove good faith,

Defendants also must prove they had a reasonable basis that they were complying

with the FLSA.  Here, any colorable attempt to research the deduction of uniform

costs would result in the discovery of DOL Fact Sheet #16: Deductions from Wages

for Uniforms and Other Facilities Under the Fair Labor Standards Act (FLSA).  Even

the most basic Google search would result in the location of that Fact Sheet, and

therefore it is patently obvious that Defendants could not have had a good faith

reason to believe it could make the uniform deduction it made.  In light of the clear

and easy to locate DOL guidance on the issue, there simply no reasonable basis for

any employer to believe it can make deductions from an employee's paycheck and not

pay that employee minimum wages for that period.  Moreover, again, Defendant's

response to an interrogatory on the issue reveals the complete lack of any reasonable

basis for their action.  *See* Exhibit K (Answer to Second Set of Interrogatories) at ECF 24-11.

C.  Defendants also failed to pay Plaintiff the Minimum Wage required by Florida law by not paying minimum wages on scheduled paydays.

Regarding the Florida minimum wage, Fla. Const. Art. 10, § 24(f) states "case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations."[4] Thus, much of the preceding analysis under the FLSA is applicable to Plaintiff's Florida minimum wage claim.[5]

1.  Pre-suit Notice is not required to bring an action under the Florida Constitution.

Plaintiff's action for unpaid Florida minimums wages is brought pursuant to both the Florida Constitution and the FMWA - Fla. Stat. § 448.110(2).  Florida's minimum wage is guaranteed by the Florida Constitution. *See* Fla. Const. Art. 10, § 24. Under *Throw v. Republic Enterprise Systems, Inc.*, No. 8:06-cv-724T-30TBM, 2006 WL (M.D. Fla. Jun. 30, 2006), there is no statutory prerequisite to a lawsuit for minimum wages brought pursuant to the Florida Constitution.  However, there is a split of authority on that issue.  *See Nichols v. Laboratory Corporation of America,* 2:13-cv-848-

---

[4] *See also* Fla. Stat. § 448.110(3) ("The provisions of §§ 213 and 214 of the federal Fair Labor Standards Act, as interpreted by applicable federal regulations and implemented by the Secretary of Labor, are incorporated [in the Florida Minimum Wage Act].")
[5] The Court has original jurisdiction over the FLSA claims and supplemental jurisdiction over the FMWA and FPWA claims.

FtM-38CM (M.D. Fla. March 1, 2014) (Florida courts are split on the issue of whether plaintiffs who have filed suit under Article X, Section 24 must nonetheless comply with the FMWA's notice requirement.) Nonetheless, even without *Throw*, the issue is moot and the split in authority need not be determined at this time because Plaintiff afforded Defendants ample pre-suit notice regarding Plaintiff's claims well in advance of this lawsuit.

2.   <u>Even assuming notice is required, Plaintiff supplied Defendants with ample pre-suit notice.</u>

Prior to bringing this action, Plaintiff put Defendants on notice of the claim that he had an action under both the FLSA and the Florida Minimum Wage Act. (*See* Exhibit A, initial letter regarding claim at ECF 24-1).   Even more detailed notice of the claim was provided to both Defendants in writing more than 15 days prior to bringing this lawsuit via a string of emails on November 27, 2017.[6]  *See* Exhibit F, Email Chain (with subsequent settlement emails not included) at ECF 24-6.  Those emails, between counsel for Plaintiff and Defendant Troiano, included ample identification of Plaintiff's claim including the fact that the deductions cannot reduce the wages below minimum wage and the approximate uniform charge in dispute of $162.00.  *Id.* It included these statements from the undersigned about exactly why Defendants were violating the law:

---

[6] Plaintiff's complaint was filed December 15, 2017.

- Thanks for your message. If you look at his last paycheck there's a uniform charge for $ 162 approximately. That's what violates the FLSA.

- I don't think [the reason for the deduction of the uniform charge] matters if the deduction reduced the wages below minimum wage.

That email chain was concluded by Mr. Troiano with the obvious understanding that he was aware of the issue and would (supposedly) look into it. *Id.*

To the extent Fla. Stat. § 448.110 requires more notice than what was provided to Defendants by way of the emails attached as Exhibit F, that requirement would be unconstitutional as a deprivation of the rights guaranteed by the Florida Constitution. Per Fla. Const. Art. 10, § 24, requirements may be passed that are "appropriate for the implementation of this amendment." Any requirement over the discussion held via Exhibits A and F would raise unnecessary hurdles to a worker's receipt of minimum wages. *See* Art. 10, § 24(f) ("The state legislature may by statute or the state Agency for Workforce Innovation may by regulation adopt any measures appropriate for the implementation of this amendment."). Although a pre-suit requirement of some information (such as the identification of off the clock hours worked) might be appropriate in other contexts, such requirements are not applicable to a case such as this one where the amount of hours worked by Plaintiff are not in dispute.

      3.    <u>Minimum wages are due Plaintiff under the FMWA for $122.94.</u>

Under the Florida Constitution and the FMWA, the required state minimum wage would be at least $195.21 for the workweek in question (24.25 hours x $8.05 State Minimum Wage). Thus, the unpaid State Minimum Wage is $111.47 ($195.21 - $83.74 = $111.47). With the addition of liquidated damages of $111.47, that sum due equals $222.94.  Even subtracting the $100 paid January 19, 2017 means $122.94 is still due.  Even if liquidated damages are not awarded, Plaintiff is still due $11.47 in unpaid Florida minimum wages ($122.94 - $111.47).

      D.    <u>Consideration of all other issues should result in judgment against both Defendants.</u>

Although Defendants pled approximately 20 affirmative defenses, they are either without merit or inapplicable. Moreover, judgment against both Defendants is proper, with reservation for an award of attorneys' fees and costs.

      1.    <u>Defendants Affirmative Defenses do not preclude Summary Judgment.</u>

Defendants' kitchen sink of affirmative defenses does not preclude summary judgment. For example, defense 8 pleads "the doctrine of *de minimis no curet lex*." However, the *de minimis* doctrine as recognized in *Anderson v. Mt Clemens Pottery Co.,* 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) relates to trivial preliminary and postlimiary activities. The FLSA provides that in recording working time, employers may disregard insignificant periods of time outside of scheduled working

hours that cannot, as a practical matter, be precisely recorded. The *de minimis* rule is simply inapplicable in this case.[7]

Another frivolous defense is number 12, which claims in part that Plaintiff failed to allege sufficient facts to support a claim for punitive damages.  Obviously, punitive damages are not at issue in this case and were not pled.

Another frivolous defense is pled as number 15, that "Mr. Troiano was never the Plaintiff's employer as defined under the Fair Labor Standards Act and Plaintiff has failed to plead such." However, paragraph 4 of the Amended Complaint States:

> Defendant Michael Troiano is the President of Lawn Enforcement
> Agency, Inc. He is an "employer" because he either: (i) exercise
> managerial control over a business or run the day-to-day operations of a
> covered enterprise; and/or (ii) directly participate in hiring, firing,
> employee compensation decisions, or other work issues.

Moreover, discovery has shown that Mr. Troiano, as President, is "responsible for all aspects of the company," including its policies and procedures. *See* answer to First Interrogatories, number 23.  Affirmative defense number 15 simply has no merit.

Similar to their Motion to Dismiss/Motion for Summary Judgment which was based on bad law, Defendants' numerous baseless affirmative defenses are an obvious attempt to make this small claim expensive to litigate without any real defense to the matter.  As such, those defenses do not preclude summary judgment.

---

[7] Moreover, affirmative defense number 13 claims that Defendant attempted to pay Plaintiff via a settlement.  However, agreement for the payment of Plaintiff's wages, declaratory relief, and attorneys' fees was reached and no Rule 68 offer was ever served.

2.      <u>Judgment against both Defendants is proper.</u>

Under the FLSA, the term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir.1986) (*citing Donovan v. Agnew*,712 F.2d 1509, 1511 (1st Cir.1983)).

"The FLSA defines an employer to "include any <u>person</u> acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d) (emphasis supplied).  Courts have long held that officers and managers are "employers" within the meaning of the FLSA when they: (i) exercise managerial control over a business or run the day-to-day operations of a covered enterprise; or (ii) directly participate in hiring, firing, employee compensation decisions, or other work issues. *See, e.g., Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999).  Moreover, the Eleventh Circuit held that liability under the FLSA will attach to an individual officer or manager of a company when that person has operational control of "significant aspects" of the business' day-to-day functions, which includes financial management.  *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008).

In the instant case, Defendant Troiano is the president and "responsible for all aspects of the company," including its policies and procedures. *See* answer to First Interrogatories, number 23 at ECF 24-10, p.6. In addition to being the president, he is also its sales manager. *See* Request for Admission number 16. Accordingly, because Troiano meets the requirements of §203(d) and the Eleventh Circuit's decisions in, *inter alia*, *Alvarez Perez*, he is an "employer" under the Act."

        3.    <u>Judgment for $122.94 should include entitlement to attorney's fees, costs and a declaratory judgment.</u>

After credit for the $83.74 paid to Plaintiff on January 9, 2017, Plaintiff is still due $92.07 under the Federal Minimum Wage ($175.81 − 84.74 = $92.07). Plus liquidated damages of $92.07 equals $184.14. Less the $100 (paid January 19, 2017) equals $84.14 due. Under the Florida Constitution and the FMWA, the unpaid State Minimum Wage is $111.47 ($195.21 - $83.74 = $111.47); plus liquidated damages of $111.47 equals $222.94; less $100 (paid January 19, 2017) equals $122.94. Thus, Plaintiff is due the higher of the two amounts ($84.14 due under the FLSA and $122.94 due under the Florida Constitution and the FMWA): $122.94.

Plaintiff, as the prevailing party, is also entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and the FLSA. Article X, section 24 states that "[p]ersons aggrieved by the violation of this amendment . . . upon prevailing . . . shall be awarded reasonable attorney's fees and costs." Fla. Const. art. X, § 24(e). Moreover, under the FMWA, upon prevailing in an action brought

pursuant to this section, aggrieved persons shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs. Fla. Stat. § 448.110(6)(c)(1).  As such, Plaintiff also respectfully requests an award of attorneys' fees and that the Court reserve jurisdiction to determine the amount of both attorneys' fees and costs.

Plaintiff also pled declaratory relief.  As such, he respectfully requests a declaration that he was covered by the FLSA and Defendants were required to pay him both Federal and State minimum wages for all hours worked.  Similar relief has been found proper by other courts such as *Barrows v. City of Chattanooga*, 944 F.Supp.2d 596, 605 (E.D. Tenn. 2013) ("Plaintiff's request for declaratory relief will thus be entered, as the Court hereby finds that Plaintiff was improperly classified as an FLSA-exempt employee.") In this case, Declaratory relief is appropriate in a case such as this one where the Defendants have consistently fought to deny they are covered by the FLSA – even moving for dismissal and summary judgment on the issue (Doc. 7) with a supporting affidavit from Defendant Troiano that "Lawn Enforcement Agency, Inc. does not engage in commerce or in the production of good for commerce, or have employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person."

## V.  <u>CONCLUSION</u>

Plaintiff respectfully requests judgment in the sum of $122.94, plus declaratory judgment that he was covered by the FLSA and Defendants were required to pay him

both Federal and State minimum wages, plus an award of attorneys' fees and costs to be determined at a later date.

Dated:  April 10, 2018

By /s/ Michael Massey
    Michael Massey
    Massey & Duffy, PLLC
    massey@352law.com
    855 E. Univ. Avenue
    Gainesville, Florida 32601
    FBN 153680

## CERTIFICATE OF SERVICE AND WORD LENGTH

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered to counsel for Defendants electronically by filing the same with the Court's electronic filing system on this April 10, 2018.   This document has 5730 words (less than 8,000) and is in 14 point font.

By /s/ Michael Massey
Michael Massey