UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CASE NO. 1:17-cv-305-MW-GRJ
AUSTIN BROWN,

      Plaintiff,

v.

LAWN ENFORCEMENT AGENCY,
INC. and MICHAEL TROIANO,

      Defendants.

                           /

## DEFENDANTS, LAWN ENFORCEMENT AGENCY, INC. AND MICHAEL TROIANO'S, AMENDED MOTION FOR   SUMMARY JUDGMENT

Defendants, LAWN ENFORCEMENT AGENCY, INC. ("LEA") AND MICHAEL TROIANO ("Mr. Troiano") file this Amended Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 12(d) and Fed. R. Civ. P. 56, and state as follows:

## INTRODUCTION

On December 15, 2017, the Plaintiff filed a Complaint alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) for alleged violations of the Fair Labor Standards Act ("FLSA") due to an alleged failure of LEA to pay Plaintiff $162.60 when money was deducted from a final paycheck for uniforms after Plaintiff left employment.  $100 of the $162.50 was soon provided to the Plaintiff by LEA. Count I of the Complaint alleges a failure to pay the Federal minimum wage and seeks back wages, liquidated damages, attorneys' fees, litigation expenses and declaratory relief. Count II alleges violation of the Florida State minimum wage laws. Mr. Troiano has not been personally served; only one copy of the Complaint was served.

On January 29, 2018, Defendants filed a Motion to Dismiss Plaintiff's Complaint and Alternative Motion for Summary Judgment. On January 29, 2018, Plaintiff filed a Response to the Motions and an Amended Complaint. The Court then denied the Defendants' Motion to Dismiss as moot. However, the Summary Judgment Motion has not been ruled upon. Defendants filed an Answer and Affirmative Defenses to the Amended Complaint on February 6, 2018. (Doc 11).

At all relevant times LEA was not an enterprise engaged in business as defined by 29 U.S.C. 203(s)(1)(A) and; therefore, the FLSA's pay requirements do not apply to LEA or its employees. Also, at all relevant times, Plaintiff was not individually engaged in interstate commerce as defined in 29 U.S.C. 207 (a)(1) and, therefore, the FLSA's pay requirements did not apply to Plaintiff, individually.

LEA is not engaged in interstate commerce, engaged in the production of goods for interstate commerce, and is not working on goods or materials that have been moved in or produced for interstate commerce. As a result, Plaintiff cannot establish diversity jurisdiction in this case, and Count II, the State law claim should also be dismissed.

Finally, Plaintiff was paid federal and Florida minimum wage for the time period in question within days of the standard pay date.

## SUMMARY JUDGMENT

Defendants will first establish that the Plaintiff's federal law claim brought pursuant to the FLSA lacks merit because there is no diversity jurisdiction. Once the FLSA claim is dismissed,

the state law claims should also be dismissed due to lack of jurisdiction and payment of federal and Florida minimum wage thus, resolving this case in its entirety in this Court.

### A.   Standard for Establishing Subject Matter Jurisdiction

It is settled that "the party invoking the Court's jurisdiction, bears the burden of demonstrating that this matter falls within the Court's subject matter jurisdiction." Makro Capital of Am., Inc. v. UBS AG, 436 F. Supp. 2d 1342, 1345 (S.D. Fla. 2006); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (holding that "the burden is on the plaintiff to prove that jurisdiction exists").

### B.   Legal Standard for Summary Judgment

Summary judgment under Federal Rule Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be met by "showing" or "pointing out" to the Court that there are no genuine issues of material fact. Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995) (per curiam) (quoting Celotex, 447 U.S. at 325). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e));

*see also* Celotex, 477 U.S. at 324. In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Instead, there must be a sufficient showing that the jury could reasonably find for that party. Anderson, 477 U.S. at 252; *see also* Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998) (citations omitted). The Court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

## C.   **Relevant Undisputed Facts**

Attached as Exhibit A is Mr. Troiano's Affidavit. As indicated in Mr. Troiano's Affidavit, LEA's business is as a lawn service agency performing work only in Florida. The Plaintiff did not engage in interstate commerce nor did he produce any goods or services outside the state of Florida. He was a lawn maintenance technician for about four months in the Lake City office. He did no work outside the State of Florida. Plaintiff drove vehicles during his employment, but there is no evidence Plaintiff used the computer, took payments, used a fax machine or made interstate telephone calls. Also, as stated in the attached Affidavit, LEA does all its lawn service work inside the State of Florida and does not engage in commerce or in the production of goods

4

for commerce,  or  have  employees  handling,  selling,  or  otherwise    working  on  goods  or materials that have been moved in or produced for commerce by any  person.

Plaintiff was paid federal minimum wage for the time period in question within days of the standard pay date.  Please see Plaintiff's Summary Judgment Exhibits B, G, and H filed on April 10, 2018 for the following facts: Plaintiff worked 24.25 hours for the pay period in question from December 28, 2016 to January 3, 2017 was paid $83.74 on his regularly scheduled pay date of January 9, 2017.  On January 19, 2017, ten days later, Plaintiff was paid $100 in additional money, which resulted in a total payment for the December 28, 2016 to January 3, 2017 pay period of $183.74. (Doc 24).

The federal minimum wage required pre-tax is $175.81 (24.25 at $7.25 per hour).  The Florida minimum wage required pre-tax is $195.21 (24.25 at $8.05).  However, the Florida minimum wage required post-taxes is $180.27; please see attached Affidavit from Angela Hanville. (Exhibit B).

D.   **Analysis**

Section 206(a) of the FLSA provides, in relevant part: Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates...29 U.S.C. § 206(a). Simply put, the FLSA requires an employer to  pay a certain minimum wage if that employee is either engaged in commerce of the production of goods for commerce or is employed in an enterprise engaged in commerce of the

5

production of goods for commerce.  Moreover, Section 203(b) defines "commerce" as follows: "Commerce" means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

FLSA provisions apply in two circumstances:  (1) where an employee is engaged in commerce or the production of goods for commerce—individual coverage; or (2) where an employee works for an enterprise engaged in commerce of the production of goods  for commerce— enterprise  coverage.  Ares v. Manuel Diaz Farms, Inc., 318 F.3d 1054, 1056 (11th Cir. 2003).  "The burden of proof lies on employees to establish that they were engaged in interstate  commerce, or in the production of goods, and that such production was for interstate commerce." Kitchings v. Florida United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1292 n.25 (M.D. Fla. 2005) (citing D.A. Schulte, Inc., v. Gangi, 328 U.S. 108, 121 (1946) and Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90 (1942)). This is because the burden of jurisdiction here is the Plaintiffs.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (holding that "the burden is on the plaintiff to prove that jurisdiction exists").

Under the first type of FLSA coverage— "individual coverage"— an employee is entitled to  the federal minimum wage as long as he or she is "engaged in commerce or in the production of  goods for commerce." See 29 U.S.C. § 206; Puello  v. Onclan Painting and Waterproofing, Corp., 2012 WL 1294674 (S.D. Fla.).  To determine whether an employee performed such work, a court must  focus its inquiry on the activities of the employee and not on the business of the employer.  See Mitchell v. Lublin McGaughy & Assocs., 358 U.S. 207, 211 (1959); see also Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1267-68 (11th Cir. 2006). In Thorne,

the Eleventh Circuit held that it was "the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce", and thus an employee must be "engaged in commerce", which means he must be "directly participating in the actual movement of persons or things in interstate commerce." Thorne, 448 F.3d at 1266. Further, in addition to the requirement that the individual must be directly participating in the actual movement of persons or things in interstate commerce, "[f]or an employee to be engaged in commerce, 'a substantial part of the employees' work must be related to interstate commerce." Kitchings, 393 F. Supp.2d at 1293 n.26 (quoting Boekemeier v. Fourth Universalist Soc'y in City of New York, 86 F. Supp.2d 280, 287 (S.D. N.Y. 2000) and (citing Walling v. Jacksonville Paper Co., 317 U.S. 564, 572 (1943)).

Under the second type of FLSA coverage— "enterprise coverage"— an employee is entitled to the federal minimum wage if he or she is employed by "an enterprise engaged in commerce," as defined by § 203(s) of the statute. Section 203(s) of the FLSA provides in relevant part that an "[e]nterprise engaged in commerce or in the production of goods for commerce" means an enterprise that: (A) (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated). 29 U.S.C. § 203(s)(1)(A)(ii). Thus, in order for an enterprise to be "engaged in commerce," for purposes of enterprise coverage, a business must have employees handling goods or materials that have been moved in interstate commerce *and* must have annual gross volume of sales or business done in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(ii).

1.   **Individual Coverage**

Plaintiff  has not even pled that he was involved in interstate commerce.  Plaintiff simply pled that he drove Defendant's vehicles in the course of his duties. Plaintiff himself has not alleged to have engaged in exchanging and sending/receiving funds to and from outside of the State of Florida, using of telephonic transmissions going outside of the State of Florida to conduct business, and transmitting electronic information through computers, the internet, via email, and otherwise outside of the State of Florida.  Even if Plaintiff had pled this, Plaintiff has read the Thorne case incorrectly when he cites to it as being in Plaintiff's favor on page seven (7) of his Motion for Summary Judgment.  Please see the arguments below as to the use of a vehicle manufactured out of state in the course of business.

2.   **Enterprise Coverage**

Under the FLSA, unless the enterprise has $500,000 or more in gross annual revenue, and has two or more employees who are engaged in commerce or in the production of goods for commerce, the employer is not subject to the Act.  29 U.S.C. § 203(s) (1) (A) (i & ii).  Section 203(s)(1)(A)(i) of the FLSA, which pertains to enterprise coverage, requires that the defendant, employer have employees engaged in commerce or in the production of goods for commerce, as follows:  (s)(1) 'Enterprise engaged in commerce or in the production of goods for commerce means an enterprise that– (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; . . . . (11th Cir., Oct. 2, 2007); Francois v. Fried Green

8

Tomatoes, Inc., 2006 WL 5097646, *2 n.1 (S.D. Fla.).  The FLSA requires an employer to pay the federal minimum wage as long as it employs two or more individuals who are engaged in commerce or in the production of goods for commerce. Id.

As stated above, it is Defendants' position that the Plaintiff was not engaged in commerce because he was a lawn maintenance technician for about four months in the Lake City office, and he did no work outside the State of Florida. Also, as stated in the attached Affidavit, LEA does all its work lawn service work inside the State of Florida and does not engage in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

LEA has more than on location in Florida, but it has no locations in any other state.  LEA also does not have two or more employees engaged in interstate commerce or in the production of goods for commerce, and it is a local business only transacting business in Florida. The Plaintiff wants the Court to find that because the Plaintiff drove a vehicle during his work that was manufactured outside of Florida and Defendants use such vehicles to transport equipment and people to job sites that there is individual or enterprise coverage in the instant case. Based upon case law from the Southern District of Florida. However, this issue has never been decided by the Eleventh Circuit Court of Appeal.

The analysis rests first on whether vehicles are goods or materials.  29 U.S. C. § 203(i) states that ships are goods.  Since vehicles, like ships, are clearly a mode of transportation it would make sense to characterize vehicles as goods, not materials as was done by the Southern District case relied on by Plaintiff, Polycarpe v. E&S Landscaping Service, Inc., 821 F. Supp. 2d 1302

(S.D. Fla. 2011). Also, "material" should be read in FLSA to mean tools or other articles necessary for doing or making something. E&S Landscaping Service, Inc., 616 F.3d 1217, 1224 (11th Cir. 2010). A vehicle is not a tool or article necessary for doing or making something; it is a mode of transportation used in almost every type of business. Also, to be considered a material, the employer must have employees "handling, selling or otherwise working on" the item for the employer's commercial, and not just any, purposes. Id. at 1227. LEA is a lawn service business, so it does not handle, sell or otherwise work on the vehicles it uses; it simply uses them for transportation from job to job.

If a vehicle is characterized as a good, the next question becomes does it fall under the ultimate consumer exception for goods, which states, "but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof. Id. at 1222. In the instant case, the vehicles used by LEA were not for resale and LEA is the ultimate consumer of the vehicles they buy and use. As a result, the vehicles fall under the ultimate consumer exception for goods and cannot be used to establish interstate commerce jurisdiction. The pest control products purchased by LEA are also goods that fall under the ultimate consumer exception. Just as in Wright v. Eagle Exterminating Co., 2010 WL 2653237, not reported in F. Supp. 2d (M.D. Fla. 2010), the pest control purchased by LEA is a good used for customer protection, and there is no evidence that LEA was not the end user or ultimate consumer of the chemicals. Similarly, a garbage removal service was found to be the ultimate consumer of gasoline it purchased. Dunlop v. Indus,. Amer. Corp., 516 F.2d 498, 499-500 (5th Cir. 1975). As a result, the Court should find that there is no individual or enterprise coverage, and thus there is no federal jurisdiction. Accordingly, LEA and Mr. Troiano respectfully

request that this Honorable Court grant summary judgment in their favor as to Count I of the Compliant.

### 3. **Defendants Paid Plaintiff Federal Minimum Wage for the Pay Period at Issue and Paid the Wages Timely.**

Plaintiff was paid federal minimum wage for the time period in question within days of the standard pay date.   Please see Plaintiff's Exhibits B, G, and H for the following facts: Plaintiff worked 24.25 hours for the pay period in question from December 28, 2016 to January 3, 2017 was paid $83.74 on his regularly scheduled pay date of January 9, 2017.  On January 19, 2017, ten days later, Plaintiff was paid $100 in additional money, which resulted in a total payment to Plaintiff for the December 28, 2016 to January 3, 2017 pay period of $183.74.

The federal minimum wage required pre-tax is $175.81 (24.25 at $7.25 per hour).  The Florida minimum wage required pre-tax is $195.21 (24.25 at $8.05).  However, the Florida minimum wage required post-taxes is $180.27; please see attached Affidavit from Angela Hanville.   The $183.74 that Plaintiff was paid is clearly more than $175.81 in federal pre-tax minimum wages and more than $180.27 in Florida post tax minimum wages that were required. All of this was discussed with opposing counsel.

Plaintiff was also paid his wages in a timely manner.  The pay period in question ended on January 3, 2017.  The regularly scheduled pay date for that pay period was January 9, 2017, and Plaintiff was paid $83.74 on that date.  Ten days later, on January 19, 2017, Plaintiff was paid an additional $100.00.  Again, this brought Plaintiff's total pay for the pay period in question to $183.74.  In Arroyave v. Rossi, 296 Fed. Appx. 835, 836-837 (11th Cir. 2008), the Court found

that being paid minimum wages ten days after the end of the pay period was not an unreasonable delay in payment and was not late. In the instant case, Plaintiff was paid minimum wages sixteen days after the pay period ended and ten days after his regularly scheduled pay date. Based upon Arroyave, the sixteen or ten-day delay in payment to the Plaintiff in the instant case should not be found to be unreasonable.

More recently, the Southern District Court found that payment of wages eight days from the end of the Plaintiffs' pay period was not unreasonable. Del Rosario v. Labor Ready Southeast, Inc., 124 F. Supp. 1300, 1316 (M.D. Fla. 2015). Again, based upon the case law, the sixteen or ten- day delay in payment to the Plaintiff in the instant case should not be found to be unreasonable. Therefore, Defendants did not violate the law when they paid Plaintiff more than the federal pre-tax minimum wage of $175.81 and more that the Florida post tax wage of $180.27 sixteen days after the pay period ended and ten days after his regularly scheduled pay date.

4. **Defendants Acted in Good Faith**.

In addition to the Plaintiff being paid both federal and Florida minimum wage in a timely manner, the Defendants acted in good faith. Plaintiff signed a document indicating that he agreed that money could be taken from his wages if his uniforms were not returned upon completion of his employment. Please see attached Uniform Program Policy documents attached as Exhibit C. As a result, Defendants had a good faith belief that the $160 originally deducted from the Plaintiff's pay which is at issue for unreturned uniforms was not improper.

5. **Count II State Law Claim.**

As established above, the Plaintiff's FLSA claim should be dismissed as the FLSA does not apply to LEA, and Count II is solely a Florida law claim. Therefore, even if the Court finds that Plaintiff was not paid minimum wage or was not paid the wage within a reasonable period of time, Count II which has no independent federal jurisdiction should be remanded to State Court. The Court may decline to exercise supplemental jurisdiction over a claim arising under state law in the following circumstances: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Therefore, jurisdiction may be declined in the event that the court has dismissed all claims of original jurisdiction. Id.

Since Count I of the Complaint (relating to the FLSA) should be dismissed, per 28 U.S.C. § 1367(c), this Court should decline jurisdiction as to Count II if it is not dismissed due to payment. Moreover, LEA anticipates that Count II of the Complaint eventually will be dismissed not only due to payment but due to Plaintiff not providing proper notice to the Defendants prior to filing suit which is required under Florida law. Therefore, assuming the Plaintiff's FLSA claim is dismissed, the Defendants request that the remaining state law claim be dismissed in favor of State Court proceedings.

WHEREFORE, Defendants, LAWN ENFORCEMENT AGENCY, INC. AND MICHAEL TROIANO, respectfully request that the Court dismiss Count I of AUSTIN BROWN's Complaint

with prejudice and dismiss Count II of AUSTIN BROWN's Complaint with prejudice or decline jurisdiction as to Count II and grant such further relief as the Court deems just and proper, including, but not limited to, attorneys' fees and costs to the extent recoverable under Federal Law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF electronic delivery or U.S. Mail Delivery to (and all others receiving electronic service) Michael Massey, Massey & Duffy, PPL, 855 East University Ave., Gainesville, FL  32601, on April 23, 2018.

JULIETTE KOVES, ESQ.
Florida Bar Number 963453
jkoves@dsklawgroup.com
Rubern Laboy, Jr.
Florida Bar Number 850381
RLaboy@dsklawgroup.com
de Beaubien, Simmons, Knight
Mantzaris & Neal, LLP
332 North Magnolia Avenue
Post Office Box 87
Orlando, Florida 32802-0087
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
Attorneys for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CASE NO. 1:17-cv-305-MW-GRJ

AUSTIN BROWN,

     Plaintiff,

v.

LAWN ENFORCEMENT AGENCY,
INC. and MICHAEL TROIANO,

     Defendants.

_____/

## AFFIDAVIT OF MICHAEL TROIANO IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA
COUNTY OF ALACHUA

BEFORE ME, the undersigned authority, personally appeared MICHAEL TROIANO, who, after being duly sworn deposes and states as follows:

1. My name is MICHAEL TROIANO. I am over 18 years of age, and I have personal knowledge of each of the facts stated in this affidavit and am competent to testify to them.

2. I am the President of Lawn Enforcement Agency, Inc.

3. Lawn Enforcement Agency, Inc. has more than once office in Florida but has no office in any other state. The company is lawn service agency performing work only in Florida.

4. Lawn Enforcement Agency, Inc. does not engage in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

Page 1 of 2



5. The supplies that we use are purchased locally.

6. Austin Brown did not engage in interstate commerce nor did he produce any goods or services outside the state of Florida. He was a lawn maintenance technician for about four months in the Lake City office. He did no work outside the State of Florida.

7. The work we do, the funds we exchange and obtain and the communications we have are inside the State of Florida.

STATE OF FLORIDA
COUNTY OF _Alachua_

Sworn to or affirmed and signed before me on _1/26/18_ by _Angela Hanville_

_Angela K. Hanville_
NOTARY PUBLIC or DEPUTY CLERK

[Print, type, or stamp commissioned name of notary or clerk.]

___✓___ Personally known
_____ Produced identification
_____ Type of identification produced _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CASE NO. 1:17-cv-305-MW-GRJ

AUSTIN BROWN,

      Plaintiff,

v.

LAWN ENFORCEMENT AGENCY,
INC. and MICHAEL TROIANO,

      Defendants.

_____/

## AFFIDAVIT OF ANGELA HANVILLE IN SUPPORT OF DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA
COUNTY OF ALACHUA

      BEFORE ME, the undersigned authority, personally appeared ANGELA HANVILLE, who, after being duly sworn deposes and states as follows:

1. My name is ANGELA HANVILLE. I am over 18 years of age, and I have personal knowledge of each of the facts stated in this affidavit and am competent to testify to them.

2. I am in charge of payroll at Lawn Enforcement Agency, Inc.

3. Lawn Enforcement Agency, Inc. has more than one office in Florida but has no office in any other state. The company is lawn service agency performing work only in Florida.

4. Plaintiff worked 24.25 hours during the pay period in question, December 28, 2016 to January 3, 2017.

5. Minimum wage in the State of Florida at the time Plaintiff worked was $8.05 per hour.

Page **1** of **2**



EXHIBIT

6.  When all taxes and other deductions taken from Plaintiff's pay were made, the net amount received by Plaintiff should be $180.27.  Plaintiff received $183.74 after being paid 83.74 on January 9, 2017 and $100 on January 19, 2017.

7.  Please see attached pay calculation.

8.  Plaintiff signed a document allowing deductions from his pay for uniforms that he did not return to the company.  Please see attached signed document.

*Angela K Hanville*

STATE OF FLORIDA
COUNTY OF *Alachua*

Sworn to or affirmed and signed before me on *04-19-18* by *Angela Hanville*

NOTARY PUBLIC or DEPUTY CLERK

JOHN GAYLARD
Notary Public, State of Florida
Commission# GG 90225
My comm. expires May 26, 2021

*John Gaylard*
[Print, type, or stamp commissioned name of notary or clerk.]

_____ Personally known
__X__ Produced identification
Type of identification produced _____ *FLDL* _____

01/09/2017

AUSTIN L. BROWN                                                        **180.27

One Hundred Eighty and 27/100***************************************************************************

AUSTIN L. BROWN
459 SW JENNIFER CT
LAKE CITY, FL 32024

Pay Period: 12/28/2016 - 01/03/2017

Employee                                                         SSN
AUSTIN L. BROWN, 459 SW JENNIFER CT, LAKE CITY, FL 32024         ***-**-0194
                                                                 Pay Period: 12/28/2016 - 01/03/2017         Pay Date: 01/09/2017

| Earnings and Hours | Hours | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Regular Rate | 24.25 | 8.05 | 195.21 | 676.46 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Medicare Employee Addl Tax | 0.00 | |
| Federal Withholding | 0.00 | |
| Social Security Employee | -12.10 | -41.94 |
| Medicare Employee | -2.84 | -9.82 |
| | -14.94 | -51.76 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| UNIFORMS | 0.00 | -166.20 |

| Net Pay | 180.27 | 459.50 |

| Paid Time Off | Earned | YTD Used | Available |
|---|---|---|---|
| Vacation | 0.00 | | 0.00 |

LAWN ENFORCEMENT AGENCY, INC., P.O. BOX 141091 3523723175, LAWN ENFORCEMENT -- EIN: 59-3228836          Powered by Intuit Payroll

Employee                                                         SSN
AUSTIN L. BROWN, 459 SW JENNIFER CT, LAKE CITY, FL 32024         ***-**-0194
                                                                 Pay Period: 12/28/2016 - 01/03/2017         Pay Date: 01/09/2017

| Earnings and Hours | Hours | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Regular Rate | 24.25 | 8.05 | 195.21 | 676.46 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Medicare Employee Addl Tax | 0.00 | |
| Federal Withholding | 0.00 | |
| Social Security Employee | -12.10 | -41.94 |
| Medicare Employee | -2.84 | -9.82 |
| | -14.94 | -51.76 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| UNIFORMS | 0.00 | -166.20 |

| Net Pay | 180.27 | 459.50 |

| Paid Time Off | Earned | YTD Used | Available |
|---|---|---|---|
| Vacation | 0.00 | | 0.00 |

LAWN ENFORCEMENT AGENCY, INC., P.O. BOX 141091 3523723175, LAWN ENFORCEMENT -- EIN: 59-3228836          Powered by Intuit Payroll

# UNIFORM PROGRAM POLICY

I hereby acknowledge that I have received a copy of the Lawn Enforcement Agency, Inc. uniform program policy. I further state that I have read the policy or the policy has been explained to me.

_____
Date Policies Received

*Austin Brown*
_____
Employees Signature

*Austin Brown*
_____
Print Name

*7/29/16*
_____
Date

| | | | |
|---|---|---|---|
| Pant size | *34×32* | Quantity | _____ |
| Short size | _____ | Quantity | _____ |
| Shirt size | *Large* | Quantity | _____ |
| Jacket size | _____ | Quantity | _____ |
| Eye Protection issued | _____ | Quantity | _____ |
| Coronas issued | _____ | Quantity | _____ |
| **Misc | _____ | | |

Total Deduction Amount   _____

# of weeks deducted   _____

_____ Weekly deduction of _____ and one final payment of _____.

**EXHIBIT**

*C*

## GENERAL, EQUIPMENT AND FACILITY POLICIES

**"AT WILL" EMPLOYMENT**
All employment at Lawn Enforcement is strictly on an "at will" basis. This means there is no obligation on either you or the company's part for continued employment. Either Lawn Enforcement or you may terminate the employment relationship at any time, for any reason, or for no reason.

## PAY SCHEDULE AND EARLY PAY
Pay schedule is from Wednesday through Tuesday for a 1-week period. Pay is either direct deposit, pay-card (issued by LEA) on payroll day the Monday that follows.  No employee may receive his paycheck before the designated payroll day. This includes terminated or voluntarily quit employees. Any exceptions to this must be approved by administration.

**Direct Deposit**
Deposits can be credited to your accounts earlier than Monday but it's not guaranteed.  Pay-day is the Monday following the work week ending Tuesday. In addition bank holidays may affect the time and/or day the direct deposit credits to your bank account.

**Pay Cards**
Pay-Cards will be available for anyone not on direct deposit. Employee pay will be deposited on to the card no later than Monday. In addition bank holidays may affect the time and/or day of credits to the pay-card account.

## OBLIGATIONS
If a terminated or voluntarily quit employee has any unpaid obligations due Lawn Enforcement (i.e. owes for broken equipment, advances, or fails to return prior issued company property), the final paycheck will reflect the appropriate deductions according to legal guidelines and said specified Company policy. LEA reserves the right to deduct from employees paycheck as damages due to neglect. These damages will first be explained to the employee prior to the deduction.

## LOST PAYCHECK
If you lose an issued paycheck Lawn Enforcement will replace that check only after a stop payment has been verified and confirmed by the bank.  A deduction of $35.00 for the stop payment charge will be taken out of the newly issued paycheck.

## DRESS CODE
Only approved Lawn Enforcement Agency Inc. uniforms are to be worn. Employees coming to work without the proper attire will be grounds for a minor violation and or be sent home without pay. All uniform pants and shirts will be purchased/leased through Lawn Enforcement Agency Inc. ALL SHIRTS MUST BE TUCKED IN AT ALL TIMES
The uniform rentals and/or purchase amount will be deducted weekly through payroll deduction. Upon leaving the company, ALL UNIFORMS MUST BE RETURNED to the company. In the case of employee, fully purchased shirts can be reimbursed up to 50% if in good condition. If uniforms are not returned the employee is subject to 100% deduction of FULL COST OF RENTALS.

Lawn Enforcement Agency, Inc. requires all employees to follow the uniform policy.

| | |
|---|---|
| Management - | Belt, appropriate footwear, Khaki shorts or pants, and a collared shirt. |
| Forman - | Belt, OSHA appropriate footwear, Brown shorts or pants, and a collared shirt. |
| Technicians - | Belt, OSHA appropriate footwear, Brown shorts or pants, and a LEA issues shirt. |
| Spray Techs- | Belt, OSHA appropriate footwear, Brown pants, and a green shirt. All specialty clothing or equipment will be supplied by Lawn Enforcement Agency, Inc. |
| Office Staff | Appropriate attire to handle walk in clients. LEA shirt preferred but not required. |
| Hats | LEA issued only |

Personal protective equipment will be supplied for all employees. Any PPE required by OSHA or Chemical labels such as gloves, respirators, boots, eye protection, ear protection and will be issued by Lawn Enforcement Agency, Inc. Lost items will be replaced and the employee will pay for the replacement. Broken or worn out items can be turned into Lawn Enforcement Agency, Inc. and new items will be issued at no cost.