# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

AUSTIN BROWN,

      *Plaintiff*,

v.                                **Case No. 1:17cv305-MW/GRJ**

LAWN ENFORCEMENT AGENCY, INC.,
**and** MICHAEL TROIANO,

      *Defendants*.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This Court has considered, without hearing, Plaintiff's and Defendants'
cross-motions for summary judgment, ECF Nos. 25 & 26. Plaintiff's motion is
**GRANTED in part** and **DENIED in part**. Defendants' motion is **GRANTED
in part** and **DENIED in part**.

This case is about the applicability of the Fair Labor Standards Act
("FLSA"), the Florida Minimum Wage Act ("FMWA"), and Article 10, § 24, of
the Florida Constitution. Both parties move for summary judgment, asking
this Court to grant relief in their favor. Plaintiff moves for this Court to
determine that Defendant Lawn Enforcement Agency, Inc., ("Lawn
Enforcement Agency") is an enterprise under the FLSA, that Lawn
Enforcement Agency must comply with the FLSA's federal-minimum-wage

1

provision, and that Defendants violated the FLSA when deducting money from Plaintiff's wages. ECF No. 25, at pg. 4. Plaintiff also seeks relief under the FMWA and the Florida Constitution, asking this Court to determine that Defendants violated both when they initially paid Plaintiff below the Florida minimum wage. ECF No. 25, at pg. 22. Plaintiff ultimately asks this Court to award damages under the FMWA and the Florida Constitution. *Id.*

Based on the same set of undisputed facts, Defendants' summary-judgment motion asks this Court to determine that Lawn Enforcement Agency is not an enterprise under the FLSA and that it does not have to follow the FLSA's minimum-wage provision. ECF No. 26, at pg. 9. Defendants also ask this Court to determine that they were in compliance with the FLSA if this Court does find that Lawn Enforcement Agency is an enterprise. ECF No. 26, at pg. 11. Additionally, Defendants argue that Plaintiff was paid above the Florida minimum wage and paid in a timely manner. ECF No. 26, at pg. 13.

# I

While both parties disagree about the application of the facts of this case, the material facts are undisputed. Austin Brown ("Plaintiff") worked for Lawn Enforcement Agency and Michael Troiano (collectively the "Defendants") as a lawn-maintenance technician from July 25, 2016, to January 4, 2017. ECF No.

24-10, at ¶ 4. Michael Troiano is the president of Lawn Enforcement Agency and is responsible for all aspects of the company. *Id* at ¶ 23.

Lawn Enforcement Agency is a lawn-care business that specializes in lawn maintenance, pest-control services, and construction. ECF No. 24-10, at ¶ 5. Defendants use both Ford and GM trucks to move lawn technicians and lawn-care equipment to various job sites. ECF No. 24-12, at ¶¶ 1 & 2. These trucks were used by two or more employees during the time Plaintiff worked for Defendants. *Id* at ¶ 9. All trucks used by the Defendants were manufactured outside of Florida. ECF No. 24-13 at ¶ 3.

From December 28, 2016, to January 3, 2017, Plaintiff worked a total of 24.25 hours at a rate of $11 per hour. ECF No. 24-2. Plaintiff's base pay for the hours worked was $266.75. ECF No. 24-5. After 1.45% of Plaintiff's check was deducted for Medicare and another 6.2% for Social Security, Plaintiff was left with $246.34. *Id*. Pursuant to Defendants' Uniform Program Policy, another $162.60 was deducted from Plaintiff's pay to cover the cost of unreturned uniforms. *Id*. This brought the total amount Plaintiff received on January 9, 2017, to $83.74. *Id*. Plaintiff returned his uniform the next day and was credited $100. ECF No. 24-8. Plaintiff received this $100 payment on January 19, 2017. *Id*. The $100 payment was made directly to Plaintiff and no

additional taxes were levied. *Id.* This brought the total amount Plaintiff was paid from December 28, 2016, to January 3, 2017, to $183.74.

Plaintiff moves for summary judgment, bringing claims under the FLSA, the FMWA, and Article 10, § 24, of the Florida Constitution. ECF No. 25. Defendants also move for summary judgment, arguing that Lawn Enforcement Agency is not subject to the FLSA because it is not covered under the act. ECF No. 26. Furthermore, Defendants argue that they complied with the FLSA, the FMWA, and the Florida Constitution, stating that they also acted in good faith if this Court were to find any violations. ECF No. 24-8.

## II

Summary judgment is proper when the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A genuine issue of material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Only facts that "might affect the outcome of the suit under the governing law" are considered material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Failure by either party to prove an essential element to that party's case, one that they bear the burden of proving at trial, entitles the other party to summary

judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standards governing cross-motions for summary judgment are the same, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant. *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1404 (S.D. Fla. 2014).

## III

Plaintiff asks this Court to determine that Lawn Enforcement Agency is an enterprise under the FLSA and that Defendants violated the FLSA when deducting money from Plaintiff's wages. ECF No. 25, at pg. 4. Defendants ask this Court to determine that Lawn Enforcement Agency is not an enterprise and that, even if it is, Defendants were in compliance with the FLSA. ECF No. 26, at pp. 9 & 11. Additionally, Defendants argue that if they did violate the FLSA they did so in good faith. ECF No. 26 at pg. 12.

### A. Lawn Enforcement Agency is an enterprise under the FLSA.

Since both parties move for summary judgment, this Court must look at each motion independently to determine if either party is entitled to judgment as a matter of law. *Lozman*, 39 F. Supp. 3d at 1404. After looking at the facts in the light most favorable to the nonmoving party for each motion, this Court has determined that Lawn Enforcement Agency is an enterprise under the FLSA.

Any business or company classified as an enterprise under the FLSA must follow all applicable provisions of the Act. A business is considered an enterprise when it has two or more employees "handling, selling, or otherwise working on *goods or materials* that have been moved in or produced for commerce" and if that business has an "annual gross volume of sales made or business done [that] is not less than $500,000." 29 U.S.C. § 203(s)(a)(A); *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1221 (11th Cir. 2010) (emphasis added).

While the FLSA provides a definition of what is considered a "good," the act itself is silent on what is considered a "material." In *Polycarpe*, the Eleventh Circuit interpreted "materials" in the FLSA to mean "tools or other articles necessary for doing or making something." 616 F.3d at 1244. The court established a two-part test, herein referred to as the "Polycarpe Test," to determine if a particular item is a material under the FLSA. *Id* at 1266. The first part of the Polycarpe Test requires this Court to determine if the item in question is a material based on the "word's ordinary meaning within the FLSA;" that is, if the item is a "tool or other article necessary for doing or making something." *Id* at 1244, 1266. The second part requires this Court to determine if the item has "a significant connection with the employer's

economic activity; the business may not just somehow internally and incidentally consume the item." *Id*.

It is an undisputed fact that Lawn Enforcement Agency had an annual gross volume of sales that exceeded $500,000 while Plaintiff was an employee. ECF No. 24-13, at ¶ 14. It is also undisputed that the trucks belonging to Lawn Enforcement Agency were manufactured outside of Florida and were handled by two or more employees. ECF No. 24-13, at ¶ 3 & 9. Based on these facts, Plaintiff argues that the trucks used by Lawn Enforcement Agency are materials moved in commerce. Plaintiff further argues that the use of the trucks, combined with the fact that Lawn Enforcement Agency's gross annual revenue exceeds $500,000, requires this Court to determine that Lawn Enforcement Agency is an enterprise under the FLSA. ECF No. 25, at pg. 4.

Under the same set of undisputed facts, Defendants ask this Court to reach the opposite conclusion; that Lawn Enforcement Agency is not an enterprise. ECF No. 26, at pg. 8. Defendants argue that the trucks used by Lawn Enforcement Agency are goods, which the business is the ultimate consumer of. ECF No. 26-12 at 9. Defendants derive their argument from the FLSA's definition of goods found in 29 U.S.C. § 203(i), which defines ships as goods within the meaning of the Act. ECF No. 26-12, at 9 & 10. Since ships and trucks are both vehicles, Defendants argue that Lawn Enforcement Agency's

7

trucks should also be classified as goods. ECF No. 26-12 at 10. And since Lawn Enforcement Agency is the ultimate consumers of the trucks, Defendants argue that Lawn Enforcement Agency is not an enterprise under the FLSA. *Id*.

After looking at the facts in the light most favorable to the nonmoving party, this Court has determined that Lawn Enforcement Agency is an enterprise under the FLSA. The trucks are materials because they satisfy the Polycarpe Test; the trucks (1) are articles that are necessary to provide lawn-care services and (2) have a significant connection with Defendants' business. The trucks are necessary because Defendants need them to transport both personnel and lawn-care equipment to job sites. The trucks also have a significant connection with Defendants' business because they are needed for transportation and their use is not incidental. *See Polycarpe v. E & S Landscaping Serv., Inc.*, 821 F. Supp. 2d 1302, 1307 (S.D. Fla. 2011) (finding, on remand, that the trucks used by a landscaping business are materials under the FLSA because the trucks are necessary to transport equipment and people to job sites and because the trucks have a significant connection with the business). Furthermore, the trucks are materials that have been moved in commerce, since the trucks were manufactured outside of Florida and were handled by at least two employees.

Based on both the undisputed facts and this Court's determination that Lawn Enforcement Agency's trucks are handled materials that have been moved in commerce, Lawn Enforcement Agency is an enterprise under the FLSA. Plaintiff's summary-judgment motion is granted with respect to enterprise coverage under the FLSA. Defendants' summary-judgment motion is denied with respect to enterprise coverage.

**B. Defendants violated the FLSA when they deducted money from Plaintiff's pay to cover the cost of work uniforms.**

Again, both parties ask this Court to reach a different conclusion based on the same set of undisputed facts. Plaintiff argues that Defendants violated the FLSA when they deducted money from Plaintiff's wages to cover the cost of the work uniforms. Defendants ultimately argue that the deduction was lawful and that Lawn Enforcement Agency was in compliance with the FLSA. After looking at the undisputed facts in the light most favorable to the nonmoving party, this Court has determined that Defendants violated the FLSA. When Defendants deducted money from Plaintiff's pay to cover the cost of work uniforms, Defendants violated the FLSA because Plaintiff was paid below the federal minimum wage.

Under the FLSA, payment for work done must be paid in a timely manner and is due on "regularly scheduled pay days." *Martin v. United States*, 117 Fed. Cl. 611, 614 (Fed. Cl. 2014). When an employer fails to pay an

employee minimum wage on the regular payment date, the employer is in violation of the FLSA and liquidated damages are available to the employee. *Atlantic Co. v. Broughton,* 146 F.2d 480, 482 (5th Cir. 1945).[1] Furthermore, employers must pay employees weekly wages free of "improper deductions [and] at a rate no lower than the minimum wage rate." *Arriaga v. Fla. Pac. Farms L.L.C.*, 305 F.3d 1228, 1235 (11th Cir. 2002) (citing 29 U.S.C. § 206(a)(1)). Employers violate the FLSA when they force employees to purchase items "specifically required for the performance of the employer's particular work . . . when the cost of such [items] purchased by the employee[s] cuts into the minimum wages required to be paid to [employees] under the [FLSA]." 29 C.F.R. § 531.35. The cost of items, such as uniforms, that are for the "benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.32.

It is undisputed that Defendants deducted $163.60 from Plaintiff's wages, bringing the total amount Plaintiff received on his regularly scheduled pay day to $83.74. It is also undisputed that the $83.74 Plaintiff received is below the minimum wage for the hours he worked. Both parties also agree that Plaintiff was eventually compensated $100 after returning his uniform,

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

bringing his total compensation to $183.74, which is above the federal minimum wage. Based on these facts, Plaintiff argues that the money that was withheld from his wages was an improper deduction that resulted in him being compensated below the federal minimum wage on his regularly scheduled pay day. Furthermore, Plaintiff argues that the $100 payment that was paid on a later date doesn't mean that Defendants acted in accordance with the FLSA, since wages are due on an employee's regularly scheduled pay dates.

Defendants ask this Court to determine that they acted in accordance with the FLSA. Despite their failure to pay Plaintiff the federal minimum wage on his regularly scheduled payday, Defendants believe that Plaintiff was still paid in a timely manner. Defendants argue that since Plaintiff ended up being compensated above the federal minimum wage, though at a later date, Defendants were in compliance with the FLSA.

Based on the undisputed facts, no reasonable jury could conclude that Defendants were in compliance with the FLSA when they deducted money from Plaintiff's wages. Under the FLSA, a business must pay its employees the federal minimum wage on their regularly scheduled pay date. *Martin*, 117 Fed. Cl. at 614. By deducting money from Plaintiff's pay to cover the cost of uniforms, Defendants violated the FLSA because Plaintiff was paid below the federal minimum wage. Although Defendants eventually paid Plaintiff $100,

bringing the total amount he was paid above the federal minimum wage, Defendants still violated the FLSA because payment is due on regularly scheduled pay days. Because the uniform-rental fee charged to Plaintiff was an improper deduction that brought his compensation below the federal minimum wage, Defendants violated the FLSA. Plaintiff's summary-judgment motion is granted with respect to Defendants' alleged violation of the FLSA. Defendants' summary-judgment motion is denied with respect to the alleged FLSA violation.

### C. Defendants failed to show that their FLSA violation was in good faith.

Plaintiff has demonstrated that Defendants violated the FLSA when money was deducted from Plaintiff's pay to cover the cost of the work uniforms. In their summary-judgment motion, Defendants ask this Court to determine that any violation of the FLSA they might have made was made in good faith. Based on the undisputed facts, Defendants failed to provide this Court with information that would allow a reasonable jury to conclude that Defendants' FLSA violation was made in good faith and that Defendants had reasonable grounds for believing they were in conformity with the FLSA.

Under the Portal-to-Portal Act, this Court may refrain from awarding liquidated damages for a FLSA violation if the employer can show that they violated the FLSA "in good faith and that [the employer] had reasonable

grounds for believing that [their] act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. The determination of whether an employer acted in good faith and had reasonable grounds for believing they were not in violation of the FLSA has both a subjective and objective component. *Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185 (11th Cir. 2005). Subjective good faith means that "the employer ha[d] an honest intention to ascertain what the FLSA requires and to act in accordance with it" *Id.* at 185. Objective good faith means that "the employer had reasonable grounds for believing its conduct comported with the FLSA." *Id.* at 185–86. Good faith requires some duty to investigate potential liability under the FLSA. *Id* (citations omitted).

Defendants have produced no evidence that would allow a reasonable jury to determine that Defendants violated the FLSA in good faith. Aside from conclusory statements in which Defendants simply claim that they made a good-faith FLSA violation, Defendants argue that Plaintiff agreeing to Lawn Enforcement Agency's "Uniform Program Policy" is proof of good faith, since Plaintiff "agreed that money could be taken from his wages if his uniforms were not returned upon completion of his employment" ECF No. 26, at ¶ 4. However, a signed document from Plaintiff authorizing a deduction in his pay does not show that Defendants "ha[d] an honest intention to ascertain what

13

the FLSA requires and to act in accordance with it," nor does it show that Defendants "had reasonable grounds for believing [their] conduct comported with the FLSA." *Id* at 185–86.

Plaintiff successfully demonstrated that Defendants violated the FLSA. Defendants have failed to provide this Court with evidence that their violation was made in good faith. Since Defendants failed to meet their burden of proof, this Court denies Defendants' motion for summary judgment with respect to their violation being in good faith. Since Defendants' FLSA violation was not in good faith, liquidated damages under the FLSA are available to Plaintiff.

## IV

Plaintiff is not able to bring forward a claim under the FMWA or Florida's Constitution because Defendants compensated Plaintiff above the Florida minimum wage before Defendants received Plaintiff's notice of the pay discrepancy.

### A. Plaintiff cannot bring a claim under the FMWA since Defendants remedied the pay discrepancy within the grace period.

Under the same set of facts regarding when and how much Plaintiff was paid, Plaintiff moves for this Court to determine that he is entitled to relief under the FMWA. Defendants ask this Court to reach the opposite conclusion, arguing that Plaintiff was paid above the Florida minimum wage in a timely

14

manner. After looking at the facts in the light most favorable to the nonmoving party, this Court has determined that Defendants did not violate the FMWA.

While the FMWA mirrors the FLSA's minimum-wage provision, the FMWA differs in that a grace period is provided to employers which allows them to remedy any pay discrepancy. Before bringing a claim for "unpaid minimum wages [under the FMWA], the person shall notify the employer alleged to have violated this section, in writing, of an intent to initiate [civil action]." § 448.110(6)(a), Fla. Stat. The Act provides an employer with the opportunity to pay the total amount of unpaid minimum wages within fifteen days of receiving notice. § 448.110(6)(b), Fla. Stat. A claim can only be brought against an employer if the employer fails to pay the unpaid wages or resolve the pay discrepancy to the satisfaction of the employee within the fifteen-day grace period. § 448.110(6)(b), Fla. Stat. Employees are not entitled to liquidated damages if the employer remedies the pay discrepancy prior to the end of the fifteen-day notice period because liquidated damages are only available "upon prevailing in an action brought pursuant to [the FMWA]" and an action cannot be commenced if the pay discrepancy is resolved within the grace period. § 448.110(6)(c), Fla. Stat.

The material facts are uncontested by either party. There is no dispute regarding when and how much Plaintiff was paid for the 24.25 hours he

worked. Both parties agree that Plaintiff was paid $83.74 on January 9, 2017, and then an additional $100 on January 19, 2017. Both parties agree that this brings Plaintiff's total compensation for the hours he worked to $183.74. What Plaintiff and Defendants disagree on is whether that additional $100 payment was enough to compensate Plaintiff at Florida's minimum wage.

Plaintiff argues that the additional payment made to him was not enough to compensate him under the FMWA. Plaintiff believes he is owed $195.21 in base pay for the 24.25 hours worked and that the $183.74 he received falls short of that. ECF No. 25 at 18. To come to the $195.21 amount, Plaintiff simply takes the 24.25 hours worked and multiplies them by Florida's minimum wage during the time Plaintiff worked for Defendants, which was $8.05 an hour.

Defendants argue that the $183.74 Plaintiff received met the minimum-wage requirements of the FMWA. Defendants claim that Plaintiff cannot sue for not being paid $195.21 because he never would have received that much in the first place. Defendants argue that after a mandatory 1.45% is deducted from Plaintiff's pay for Medicare and another 6.2% is deducted for Social Security, Plaintiff would only receive $180.28 if he was paid exactly $8.05 for each of the 24.25 hours he worked. Furthermore, the $100 that was compensated to Plaintiff at a later date was only taxed once on January 9,

16

2017, meaning that Plaintiff was compensated a total of $183.74 for the hours he worked. ECF No. 24-8 at 9 (showing that no additional Medicare or Social Security taxes were levied against the $100 payment).

Based on the undisputed facts, this Court finds that no reasonable jury could determine that Defendants violated the FMWA. Plaintiff cannot claim that he is owed a total of $195.21 if he never would have received that amount in the first place. There are mandatory Medicare and Social Security taxes that must be deducted from Plaintiff's pay. As stated previously, 1.45% is deducted for Medicare and 6.2% is deducted for Social Security. Therefore, that $2.83 and $12.10 respectively must be deducted from Plaintiff's pay check, totaling to a $14.93 reduction.[2] If Plaintiff was properly paid Florida's minimum wage for the hours he worked, Plaintiff would ultimately be receiving $180.28 after taxes.[3] Plaintiff ended up receiving $183.74 in total compensation for the hours he worked. Therefore, no reasonable jury could determine that Plaintiff was compensated below Florida's minimum wage for the hours he worked.

Furthermore, Defendants remedied the pay discrepancy before the end of the allotted fifteen-day grace period under the FMWA. Neither party

---

[2] Medicare Deduction = $195.21 x 1.45% = $2.83
  Social Security Deduction = $195.21 x 6.2% = $12.10
  Total Deduction = $2.83 + $12.10 = $14.93

[3] $195.21 – $14.93 = $180.28

contests that Plaintiff gave Defendants notice of the pay discrepancy, pursuant to the FMWA, in a letter sent to Defendants in November of 2017. ECF No. 25 at 16. The fifteen-day grace period to resolve the pay discrepancy would have begun the day that Defendants received the letter. § 448.110(6)(b), Fla. Stat. As stated above, Defendants resolved the pay discrepancy on January 19, 2017, by paying Plaintiff $100, bringing the total amount he was paid slightly above Florida's minimum wage. Since Defendants resolved the alleged violation before notice was given, Plaintiff is not able to bring a claim under the FMWA. Since Plaintiff cannot bring a claim he cannot possibly "[prevail] in an action brought pursuant to [the FMWA]" and is not entitled to liquidated damages as well. § 448.110(c)(1), Fla. Stat.

Based on the undisputed facts, no reasonable jury could determine that Defendants failed to comply with the FMWA. Plaintiff's motion for summary judgment regarding the FMWA claim is denied. Defendants' summary judgment-motion regarding the FMWA is granted in part.

### B. Plaintiff cannot bring a claim under Article 10, § 24, of the Florida Constitution since Defendants remedied the pay discrepancy before receiving notice of the alleged violation.

Plaintiff argues that a claim can be brought directly under the Florida Constitution, even if a claim cannot be brought under the FMWA. Based on both the law and the undisputed facts, Plaintiff is not able to bring a claim

under Article 10, § 24, of the Florida Constitution. Defendants remedied the pay discrepancy pursuant to the notice requirement of the FMWA, which is the implementing legislation and "exclusive remedy" for Article 10, § 24 claims. § 448.110(c)(1), Fla. Stat.

There is a split among courts regarding how claims may be brought pursuant to Article 10, § 24, of the Florida Constitution. On one hand, Article 10, § 24, does not require implementing legislation in order to be enforced, creating an independent cause of action. Art. X, § 24(f), Fla. Const. But on the other hand, Article 10, § 24, authorizes the state legislature to "by statute . . . adopt any measures appropriate for the implementation of [Article 10, § 24]. Art. X, § 24(f), Fla. Const. The FMWA purports to do just that, with the stated purpose of the Act being to "provide measures appropriate for the implementation of s. 24, Art. X of the State Constitution, in accordance with authority granted to the Legislature pursuant to s. 24(f), Art. X of the State Constitution." § 448.110(2), Fla. Stat. The FMWA creates additional requirements employees must meet in order to bring a claim for unpaid wages: the notice requirement and the fifteen-day grace period allotted to employers. § 448.110(6)(a), Fla. Stat.

Some courts have held that employees do not need to follow the additional notice requirements laid out in the FMWA to bring a claim under

19

Florida's Constitution. *See Throw v. Republic Enter. Sys., Inc.*, No. 8:06-CV-724-T-30, 2006 WL 1823783, at *2 (M.D. Fla. June 30, 2006) (finding that "[s]ection 24 [of Article 10 of the Florida Constitution] creates a constitutional right directly enforceable . . . with no requirement that notice be given"). Courts construing Article 10, § 24, this way have found that § 24 is "self-executing and establishes a private cause of action" independent of the FMWA. *Bates v. Smuggler's Enters., Inc.*, No. 210-CV-136-FTM-29DNF, 2010 WL 3293347, at *3 (M.D. Fla. Aug. 19, 2010).

Other courts have held that plaintiffs must follow the notice provisions outlined in the FMWA when bringing a claim under Article 10, § 24, of the Florida Constitution. Courts on this side of the split have also acknowledged that Article 10, § 24, is a self-executing constitutional cause of action, but note that the Florida Legislature "may provide additional law[s] addressing a self-executing constitutional scheme assuming such laws supplement, protect, or further the availability of the constitutionally conferred right, but the Legislature may not modify the right in such a fashion that it alters or frustrates the intent of the framers or the people." *Garcia-Celestino v. Ruiz Harveseting, Inc.*, No. 2:10-CV-542-FtM-38DNF, 2013 WL 3816730, at *16 (M.D. Fla. July 22, 2013) (quoting *Browning v. Fla. Hometown Democracy, Inc.*, PAC, 29 So. 3d 1053, 1064 (Fla. 2010)). These courts have determined that the

FMWA does not "frustrate the intent of [Article 10, § 24]" and that the Act "regulat[es] the method of the Amendment's enforcement as it is expressly authorized to do by the constitutional provision." *Id*.

This Court respectfully disagrees with the decision made in *Throw* and adopts the conclusion reached by *Garcia-Celestino*. Similarly, this Court finds that the FMWA does not frustrate the intent behind Article 10, § 24, and that the Act simply regulates the enforcement of the Amendment, as authorized. Because the undisputed facts show that Defendants remedied the pay discrepancy before notice of an alleged minimum-wage violation was filed, Plaintiff may not bring a claim under the Florida Constitution. Plaintiff's summary-judgment motion regarding his claim under the Florida Constitution is denied.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 25, is **GRANTED in part** and **DENIED in part.** Specifically, Plaintiff's motion is **GRANTED** with respect to Lawn Enforcement Agency being considered an enterprise under the FLSA and with respect to Defendants' alleged violation of the FLSA. Plaintiff's motion is

**DENIED** with respect to Plaintiff's FMWA claim and with respect to
Plaintiff's claim under the Florida Constitution.

2. Defendants' Motion for Summary Judgment, ECF. No. 26, is
   **GRANTED in part** and **DENIED in part.** Specifically, Defendants'
   motion is **GRANTED** with respect to the applicability of the FMWA.
   Defendants' motion is **DENIED** with respect to Lawn Enforcement
   Agency's classification as an enterprise, Defendants' FLSA violation,
   and Defendants' argument that they acted in good faith.

3. This Court does not direct partial entry of judgment pursuant to
   Federal Rule of Civil Procedure 54(b).

4. The parties are directed to file supplemental briefs on the issue of
   damages as to the FLSA claim in light of this order. Plaintiff must file
   his brief no later than August 3, 2018. Defendant must file its
   response no later than August 17, 2018.

**SO ORDERED on July 23, 2018.**

<u>s/Mark E. Walker</u>
**United States District Judge**