UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CASE NO.  1:17-cv-305-MW-GRJ
AUSTIN BROWN,

      Plaintiff,

v.

LAWN ENFORCEMENT AGENCY,
INC. and MICHAEL TROIANO,

      Defendants.

_____/

## DEFENDANTS' BRIEF ON ATTORNEY'S FEES AND COSTS

Defendants, LAWN ENFORCEMENT AGENCY, INC. ("LEA") AND

MICHAEL TROIANO ("Mr. Troiano") file this Brief on Attorney's Fees and Costs,

pursuant to the Court's Order at Doc. 47, and state as follows:

## I - BACKGROUND

The amount of attorney's fees being requested by Mr. Massey is completely

unreasonable and should be greatly reduced. Below is a timeline to show: the events

that lead to this case, the fact that the Plaintiff was paid minimum wage within ten

(10) days of his regular pay period, the actions taken by Mr. Massey that were

incorrect, and the minimum of four times Mr. Massey and his client had to settle the

case for the full amount of damages requested in Count II, the Florida minimum wage claim, which plead the most amount of damages of the two Counts.

## Timeline

**January 9, 2017:**    Plaintiff paid less than minimum wage.

**January 19, 2017:**    Plaintiff **paid $100 which brings him up to both Federal and Florida minimum wage** for the pay period, which was his last pay period.

**November 15, 2017:**    Plaintiff Demand Letter – no amount demanded but from reading the letter, the most owed to the Plaintiff would be about $162.60.

**November 27, 2017:**    Mr. Troiano e-mailed Mr. Massey telling him about the $100 and asking what more needs to be paid. Mr. Massey tells Mr. Troiano to contact Plaintiff directly.

**Between November 27 and December 27, 2017:**    Mr. Troiano tried to contact the Plaintiff to resolve the situation three times with no answer and no voice mail set up.

**December 15, 2017:**    Complaint filed asking for Federal damages in the amount of **$184.14** and Florida damages in the amount of **$195.21**.

**December 21, 2017:**    Mr. Troiano and Lawn Enforcement are served.

**December 27, 2017:**    Mr. Troiano contacts Mr. Massey who requests approximately $4000 to settle the case.

**January 2018:**    Mr. Massey offers to settle with Mr. Troiano for $2500.

**January 9, 2018:**    $1500 Counter-offer made to Mr. Massey by counsel and never received a response despite several attempts.

**January 29, 2018:**    Motion to Dismiss Complaint filed.

**January 29, 2018:**    **First Amended Complaint filed in response to the Motion to Dismiss Complaint, and Plaintiff asks for same amount of damages as the Complaint. (Plaintiff**

|                      | is **Correcting his Mistakes and still not pleading correct amount of damages**) |
|----------------------|---|
| **February 26, 2018**: | Plaintiff files Amended Rule 26 Disclosure which still says that Plaintiff was not paid all minimum wages but now says that **Federal damages** are possibly only **$84.14** and **Florida** is possibly **$122.94**. |
| **February 28, 2108**: | The undersigned counsel brought to Mr. Massey's attention his failure to consider the required payment of taxes in his calculations of the amount for minimum wages under FLSA and The Florida Act and the fact that Plaintiff was actually paid the full minimum wages |
| **February 28, 2108**: | Mr. Troiano offered to pay the full amount of damages stated in Count II of the Amended Complaint, **$195.21**. The offer was never accepted. |
| **March 1, 2018**: | Payment of original damages claimed to Plaintiff of **$195.21 with an offer to pay reasonable attorney's fees**. However, the **check was refused** on or about the same day. |
| **May 30, 2018**: | Proposals for Settlement of $2400 by Lawn Enforcement and $100 by Mr. Troiano sent to Mr. Massey. |
| **June 8, 2018**: | Mediation was a waste of time where Mr. Massey demanded outrageous attorney's fees. |
| **July 24, 2018**: | Order on Cross Motions for Summary Judgment finding that Count II, which was plead twice as **$195.21** in damages, is dismissed and Court says Count II never should have been plead. Plaintiff wins Count I plead twice as **$184.14** in damages. The Court indicated in its Order on Cross-Motions for Summary Judgment, Doc. 35, **the $100 payment was clearly made long before any notice was given to LEA and Mr. Troiano about any possible law violation, and the Florida Minimum Wage was satisfied on January 19, 2017, so there was clearly no violation of the Florida Minimum Wage Act or the** |

|  | **Florida Constitution** when Plaintiff both gave the alleged notice in November 2017 and then sued in December 2017 |
|---|---|
| **July 30, 2018:** | Agreement with Plaintiff that **only $84.14 in damages is owed** to Plaintiff. |

Please see Doc. 41 for a more detailed background.  Plaintiff and Mr. Massey had at least four chances where they were offered and refused $195.21 in damages which was the full amount of the alleged minimum wage damages for his client that were twice plead. Federal damages were plead in the amount $184.14 and Florida damages were plead in the amount of $195.21.  Instead, Mr. Massey's client will get $84.14 in damages, which is forty-three percent (43%) of the $195.21 he could have accepted before the litigation, early in the litigation and later in the litigation but before the Court's ruling on the Summary Judgment Motions where Plaintiff lost the ability to get at least $122.94 in damages for the Florida Count.  That lost $111.07 in damages may not mean much to Mr. Massey, but I am sure it means a lot to the Plaintiff who came to him after having been shorted less than that amount in minimum wage pay to begin with.  Mr. Massey now wants attorney's fees that are 900% more than the damages his client will receive.

The undersigned counsel informally requested the Plaintiff's retainer agreement from Mr. Massey and gave him case law showing it is relevant when attorney's fees are requested. However, Mr. Massey stated it was not relevant and refused to provide it, yet he discusses it in his Brief.

## II - WHY THE ATTORNEY'S FEES BEING REQUESTED ARE UNREASONABLE

### A.   Basic Law

Courts start the evaluation of attorney's fees requested by multiplying the number of hours reasonably expended by a reasonable hourly rate.  Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  A reasonable hourly rate is the prevailing market rate in the pertinent legal community for similar services by lawyers of similar skills, experience and reputation. Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  Courts are also considered experts as to the issue of hourly rates and can consider their own knowledge and experience regarding reasonable and proper fees and can form a judgment without the use of an expert. Id. at 1303. When considering the number of hours, plaintiff's counsel does not get to charge for mistakes or time spent correcting their mistakes, Mobley v. Apfel, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000), redundant, unnecessary or duplicative work, time on basic research into FLSA issues, and clerical work. Walker v. Iron Sushi LLC, 752 Fed.Appx. 910 (11th Cir. 2018) and Ward v. Parks Electric Co. Inc., 2009 WL 1684455 5 (M.D. Fla. June 16, 2009).

Once this lodestar is determined, the attorney's fees can be adjusted based upon the results obtained.  Popham v. City of Kennesaw, 820 F.2d 1570, 1578-1579

(11th Cir. 1987). "As an alternative or in addition to adjusting the number of hours used to calculate the lodestar, the Court may apply an *after-the-fact reduction of the loadstar* where the Plaintiff achieved only partial or limited success, and this is true even where the Plaintiffs' claims are interrelated, non-frivolous and raised in good faith.' " Andriello v. CFI Sales & Marketing, Inc., 2012 WL 3264920 7 (M.D. Fla. Jan. 4, 2012), citing Brandt v. Magnificent Quality Florals Corp., 2011 WL 4625379 at 11-12 (S.D. Fla. Sept. 30, 2011) (quoting Hensley v. Eckhart, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L,Ed.2d 40 (1983) (emphasis added).  If the Court reduces the loadstar after-the-fact, due to plaintiff's limited success, the Court does not have to engage in an hour by hour analysis as long as the Court gives a clear explanation of the reduction in fees. Laranger, 10 F.3d at 783. Also, the rejection of settlement offers and its relationship to the final results attained is a legitimate factor to consider in an award of fees. Walker, 752 Fed.Appx. 910.

An award of attorney fees to a prevailing plaintiff under FLSA is not based upon a finding of the defendant's fault, but, rather, on the Congressional determination that such a provision was necessary to make plaintiff's whole... See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 65 S. Ct. 895, 89, L. Ed. 1296 706 n. 15, 16 (1945) (addressing legislative history of the fee provision); Greenburg v. Arsenal Bld. Corp. 50 F.Supp. 700 (S.D.N.Y. 1943) (rev'd in part on other grounds

by O'Neil, supra.).  Also, "an entitlement to fees cannot be a carte blanche license for Plaintiff to outrageously and in bad faith run up attorney fees without any threat of sanction." Gross v. Killian Oaks House of Learning, 248 F. Supp2d 1162, 168-69 (S.D. Fla. 2003).  FLSA suits are not meant to be a windfall for plaintiff's counsel. Wolff v. Royal American Management, Inc., 2012 WL 5303665 4-5 (S.D. Ala. Oct. 25, 2012) "FLSA suites are not meant to become a cottage industry divorced from the benefits they provide, and fees should not shade over from fair play into a punitive measure against defendants who challenge a plaintiff's overtime claim in good faith." Id. at 5.

### B. Application of Law to Requested Fees

1. **Lodestar**

Courts start the evaluation of attorney's fees requested by multiplying the number of hours reasonable expended by a reasonable hourly rate.  Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  A reasonable hourly rate is the prevailing market rate in the pertinent legal community for similar services by lawyers of similar skills, experience and reputation. Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  Courts are also considered experts as to the issue of hourly rates and can consider their own knowledge and experience regarding reasonable and proper fees and can form a judgment without

the use of an expert. Id. at 1303. The Court in Longhini v. New Way Foods, Inc., 2016 WL 6806243 2 (S.D. Fla. November 16, 2016), reduced the hourly rate of the attorneys in the case from $425 per hour to $250 per hour because the work done was simple and straight-forward. The cases cited below have a range of hourly rates of $175 to $300.

Mr. Massey is seeking an hourly rate of $425 per hour. LEA and Mr. Troiano request this hourly rate be reduced to $250 per hour, which is the hourly rate of the undersigned attorney who has over twenty-six years of experience as an attorney, most of which as a litigator. The case was a minimum wage case that was simple and straight-forward, but Mr. Massey still plead the incorrect amount of damages twice, had to file an Amended Complaint had to file an Amended Rule 26 Disclosure. He also made two Requests for Production and Interrogatories and one Request for Admissions. This case did not demonstrate any real expertise on the part Mr. Massey, especially if you look at all the time he spent on researching issues. This case could easily have been handled by a much less experienced attorney.

When considering the number of hours, plaintiff's counsel does not get to charge for mistakes or time spent correcting their mistakes, Mobley v. Apfel, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000), redundant, unnecessary or duplicative work, time on basic research into FLSA issues, and clerical work. Walker v. Iron Sushi

LLC, 752 Fed.Appx. 910 (11th Cir. 2018) and <u>Ward v. Parks Electric Co. Inc.</u>, 2009 WL 1684455 5 (M.D. Fla. June 16, 2009).

In review of Mr Massey's claimed hours of work, LEA and Mr. Troiano request the following reduction of hours in conjunction with the across the board reduction of the lodestar. First, the reductions for time Mr. Massey spent doing basic FLSA research, some of which is also redundant: February 8, 2017, 2.6 hours; December 12, 2017, 2.2 hours; December 12, 2107, 1.3 hours; December 12, 2017, 1.1 hours; another entry on December 12, 2017 of 1.1 hours; December 15, 2017, **.7** of the 1.5 hours; January 12, 2018, .4 hours; January 29, 2018, **.5** of the 1.5 hours; January 29, 2018, 1.2 hours; February 1, 2018, .7 hours; February 7, 2018, **.6** of 1.3 hours; February 8, 2018, 1.8 hours; February 19, 2018, 2.2 hours; February 20, 2018, 1 hour; February 28, 2108, 1.9 hours - <u>Dionne</u> issue Mr. Massey claims to have experience and expertise in; March 1, 2018, 3.5 hours; April 7, 2018, **1.5** of 3.7 hours; April 8, 2018, **2.0** hours of 4.5 hours; April 24, 2018, **.5** of 2.1 hours; April 24, 2018, **.6** of 1.6 hours; May 30, 2018, **1.0** of 1.7 hours; May 31, 2018, 1.7 hours; June 8, 2018, .4 hours; July 24, 2018, 2.2 hours; July 26, 2018, .4 hours; July 30, 2018, 2.4 hours; July 31, 2018, **2.0** hours of 4.6 hours; August 1, 2018, **2.4** of 5.4 hours; August 5, 2018, **1.0** of 2.3 hours; and August 6, 2018, **2.0** of 4.3 hours. The total requested reduction basic research and redundancy is **40.6 hours**.

Second, the reductions for time Mr. Massey spent correcting his own mistakes: January 29, 2018, 1.0 prep. of amended complaint; January 29, 1.1 continued prep. of amended complaint; February 26, 2018, .2 prep. of amended initial disclosures; and March 1, 2018, .2, analysis of how taxes fit into the $100 that was paid to Plaintiff. The total reduction requested for time Mr. Massey spent correcting his mistakes is **2.5 hours**. This reduction does not include the time Mr. Massey spent that included mistakes, such as the drafting of the Complaint and Amended Complaint.

Third, the reductions for time Mr. Massey spent doing clerical work: December 12, 2107, .2 prep. of summons; December 12, 2107, .2 prep of civil cover sheet; April 11, 2018, .1, calendaring dates; June 6, 2018, .5, calendaring dates; June 14, 2018, .1 exchanging e-mail with the undersigned counsel's assistant re: setting attorney conference; and another June 14, 2018, .1 exchanging e-mail with the undersigned counsel's assistant re: setting attorney conference. The total reduction requested for clerical time is **1.2 hours**. The total reduction of hours requested is **44.3 hours**. The hours Mr. Massey is claiming after the Court found entitlement to fees is not time he can be compensated for. As a result, the total relevant starting time is 162.3 hours minus 44.3 hours of reduction time = **118 hours**. $250 per hour times 118 hours = $29,500. Therefore, the loadstar amount requested is $29,500.

2.     **Across the Board Reduction of Lodestar**

LEA and Mr. Troiano ask that the Court base the amount of attorney's fees on the very limited success that the Plaintiff actually attained with regard to winning only the Count which involved the lesser damages, as well as, the actual amount of damages obtained versus the damages Plaintiff plead in both Complaints. LEA and Mr. Troiano believe at least a seventy-five (75) percent reduction in the fees requested is appropriate. Plaintiff won one of the two minimum wage claims he made after the Court ruled on Summary Judgment Motions made by each party. Not only did LEA and Mr. Troiano prevail in their Motion for Summary Judgment as to the Florida minimum wage claim made, the Court indicated in its Order on Cross-Motions for Summary Judgment, Doc. 35, that the claim **should never have been brought** because the $100 payment made to Plaintiff in January 2017, satisfied plaintiff's minimum wage, and it was clearly made long before any notice was given to LEA and Mr. Troiano about any possible minimum wage law violation.

The Court can look at the overall results of the case and determine that the lodestar amount should be reduced if the amount is excessive in relation to the plaintiff's actual success. Popham, 820 F.2d at 1578-1579 (11th Cir. 1987). As stated above and in Doc 41, LEA and Mr. Troiano believe that the case was frivolous and was not raised in good faith, but the Court does not have to find that for the

Court to reduce the attorney's fees as requested by LEA and Mr. Troiano. "As an alternative or in addition to adjusting the number of hours used to calculate the lodestar, the Court may apply an *after-the-fact reduction of the loadstar* where the Plaintiff achieved only partial or limited success, and this is true even where the Plaintiffs' claims are interrelated, non-frivolous and raised in good faith.'" Andriello v. CFI Sales & Marketing, Inc., 2012 WL 3264920 7 (M.D. Fla. Jan. 4, 2012), citing Brandt v. Magnificent Quality Florals Corp., 2011 WL 4625379 at 11-12 (S.D. Fla. Sept. 30, 2011) (quoting Hensley v. Eckhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L,Ed.2d 40 (1983) (emphasis added).

In Perez v. Carey Intern., Inc., 373 Fed.Appx. 907, 912 (11th Cir. 2010), the Court cited the District Court case, Powell v. Carey International, Inc. 547 F. Supp. 2d 1281, 1286 (S.D. Fla. 2008), which found a disturbing undercurrent in the case from the beginning was "what will ultimately generate the greatest fees rather than legitimate recovery for Plaintiffs." Id. The District Court criticized the Plaintiff's attorney, Kleppin, for his "unrealistic and legally unsupported damage calculations" and highlighted the fact that some of the plaintiffs received less than they would have if they had settled their claims before the lawsuit was filed. Id. at 1286-88. The District Court also took into account Kleppin's actions in demanding inflated and totally unsupported damages and ignoring the settled law. Id. at 1289.

Like Kleppin, Mr. Massey plead Count II that was totally unsupported by settled law, he twice plead damages that were more than twice as much as the law allowed despite the fact that his client was paid full his minimum wages within ten days of his regular pay period in January 2017. Mr. Massey knew this was the case by at least November 27, 2107, when Mr. Troiano e-mailed him and told him after receiving the demand letter that had no amount of damages stated in it. Mr. Massey knew, or should have known at that point, that the $100 payment brought Plaintiff to the minimum wage required by both Federal and Florida law, but he ignored this. Mr. Massey twice plead damages of $184.14 for the federal Count and $195.21 for the Florida Count.   Even though he filed an Amended Rule 26 Disclosure on February 26, 2018, stating the damages may only be $84,14 for the Federal claim and $122.94 for the Florida claim, he did not concede this or file a Second Amended Complaint.   Mr. Massey also had an opportunity to correct his mistake in the Amended Complaint that was filed in response to our initial Motion to Dismiss. Still, Mr. Massey claims to be a great expert in FLSA claims and deserving of $425 an hour.

Also, in November 2017, after Mr. Troiano contacted Mr. Massey to try to make things right, Mr. Massey pawned him off to the Plaintiff and never followed up with Mr. Troiano before filing the lawsuit in December 2017.  The plaintiff in

this case would have very likely received more money, the full initially alleged damages, if Mr. Massey had simply told Mr. Troiano how much was required to answer the demand letter and to make things right. Mr. Troiano did his part by trying to contact the Plaintiff as Mr. Massey asked him to do, but after at least three tries, he was unable to get the Plaintiff to answer the telephone and no voice mail was set up.

The Plaintiff also would have gotten the full amount of damages alleged in the two Complaints, $195.21, if Mr. Massey had responded to the counteroffer of $1500 made by the undersigned counsel after Mr. Massey offered to settle for $2500 with Mr. Troiano after Defendants were served. It became clear when, after several attempts to get a response to our counteroffer were ignored, that the case had to be litigated. Although the undersigned counsel initially made an incorrect argument as to the jurisdiction issue, the other arguments and defenses presented were legitimate and were supported by law as was born out, in part, by the Court dismissing Count II, which had the higher damages amount. On March 1, 2018, the Plaintiff also could have received the full amount of damages plead, $195.21, when the undersigned counsel dropped of a check for that amount and a letter indicating the willingness to discuss payment of reasonable attorney's fees. This was not a trick, this was an attempt to give the Plaintiff what he wanted and to stop the attorney's fees from

continuing to rise for both sides. However, the check was sent back without any attempt to negotiate reasonable attorney's fees or to even ask that the Judge or Magistrate be allowed to decide the fees after argument.

On May 30, 2018, Proposals for Settlement of $2400 by LEA and $100 by Mr. Troiano were sent to Mr. Massey, which gave yet another chance for the case to be settled with the Plaintiff receiving the full amount of damages plead. This was also rejected and never responded to with any type of offer. Also, as previously stated, mediation was a complete waste of time where Mr. Massey demanded an outrageous amount of attorney's fees. This was not a surprise to the undersigned counsel since Mr. Massey and I mediated another wages case which was also a waste of time, and the undersigned counsel had been told by an attorney in Gainesville that mediations with Mr. Massey were a waste of time. In that other case between Mr. Massey and the undersigned counsel, Mr. Massey's client, the plaintiff, lost at trial and got nothing. Yet, Mr. Massey claims to be an expert in FLSA claims and deserving of $425 an hour. All of the above, especially the multiple times full damages were rejected, supports a finding of the Court of a disturbing undercurrent in the case from the beginning that Mr. Massey was doing what will ultimately generate the greatest fees rather than fighting for a legitimate recovery for his client, the Plaintiff.

In <u>Walker,</u> 752 Fed.Appx. 910, the 11th Circuit Court reduced the requested attorney's fees from $27,627 to $7,640, and the reduction was upheld for many of the same reasons stated above.  The damages initially sought were much less than what was obtained, and much less than what could have been achieved with settlement offers, especially early on.  <u>Id</u>. The Court also noted that the overall nature of the case did not justify the high attorney's fees, the case was not complex or protracted and there was no formal discovery.  <u>Id</u>.  The instant case was not complex, the two minimum wage counts were basically the same and were based upon a common core of facts, the litigation was not protracted and there was limited discovery; there were no depositions, and LEA and Mr. Troiano did no discovery. In the <u>Walker</u> case, the attorney's fees requested were reduced by a little more than seventy-two (72) percent, and we are asking for a similar reduction of seventy-five (75) percent.

In <u>Anderson v. Stiefel Aluminum Inc.</u>, 2013 WL 3714089 1 (M.D. Fla. July 15, 2013), the Court reduced the requested attorney's fees from $63,630 to $7,175, a reduction of over eighty-eight (88) percent of the loadstar amount. The Court found the Plaintiff achieved minimal success when it settled for eleven percent of the damages initially calculated and that the amount obtained was less than what was offered by the Defendants at the beginning of the lawsuit. In the instant case, LEA

and Mr. Troiano actually offered the full amount of damages at the beginning of the case and several times thereafter. Id. at 1-2. The Court also found that from the start of the lawsuit, the Plaintiff's counsel applied a legally unsupported valuation of the Plaintiff's damages which the Court found needlessly increased the amount of attorney's fees Plaintiff incurred in the case. Id. The Court also mentioned the seven depositions taken by the Plaintiff as excessive. Id. at 1.

The same is true in the instant case, Mr. Massey applied a legally unsupported valuation of the Plaintiff's damages in two Complaints, the unsupported valuation needlessly increased the amount of attorney's fees incurred by Plaintiff. Also, the Plaintiff's attorney hours are about twice as many as the undersigned counsels' hours in part because of the Plaintiff's two Requests to Produce, two sets of Interrogatories and a Request for Admissions.   Like in Anderson, the Plaintiff could have gotten more damages before litigation even began and was offered several times during the litigation, including at the beginning. The additional litigation led the Plaintiff to getting only about forty-three percent (43%) of the damages plead, $84.14, instead of $195.21, which is even more of a reason to significantly reduce the amount of attorney's fees Mr. Massey is requesting.

In Andriello, 2012 WL 3264920 at 7 – 8, the Court reduced the Loadstar amount of attorney's fees by seventy percent from $48,290.50 to $14,487.15. The

Court chose to make an across the board reduction of the lodestar of seventy (70) percent simply based upon the very limited success of the Plaintiffs. Only forty-three (43) percent of the plaintiffs prevailed and those plaintiffs only recovered three (3) percent of the damages claimed. Id. Mr. Massey only had one client but lost one of two Counts plead, and that one client will only get about forty-three (43) percent of the damages twice plead.  The percentage of damages lost by Plaintiff can also be viewed as more significant since the maximum amount of damages plead was only $195.21, and the Plaintiff gave up the opportunity to get full damages several times. As a result, the Court can make an across the board reduction of Mr. Massey's fees of at least 75% as long as the Court provides a clear explanation for doing so.

A District Court case which is very similar to the instant case is Wolff, 2012 WL 5303665 1-10 in regard to the fact that the Court found the case should have been a straight forward FLSA overtime case, and the Defense counsel accused the Plaintiff's counsel of running up attorney's fees, and the Plaintiff's counsel accused the Defense counsel of going to lengths to avoid payment of attorney's fees. However, in Wolff, the Plaintiff plead an unstated amount of damages and later provided an amount of $1800 and the Plaintiff settled for more, $3600. Id. at 1-3. The Court in Wolff reduced the amount of attorney's fees sought, over $150,000, by sixty (60) percent. Id. at 8.

In doing so, the Court noted that,

"in light of the gross disparity between what plaintiff claimed and what her attorneys now seek for obtaining recovery, there is a significant potential for the fee award to become a windfall for plaintiff's counsel. FLSA suites are not meant to become a cottage industry divorced from the benefits they provide, and fees should not shade over from fair play into a punitive measure against defendants who challenge a plaintiff's overtime claim in good faith." Id. at 5.

Like Wolff, there is a gross disparity between what the Plaintiff claimed and what Mr. Massey now seeks in attorney's fees; damages sought for the winning Count I were $184.14, damages won for Count I were $84.14, and Mr. Massey is seeking $76,670. An award of fees near the number requested by Mr. Massey would be a windfall for him, especially in light of the additional factors not present in Wolff. For example, in Wolff, the plaintiff did not lose one of two counts, the Wolff plaintiff settled. Also, the plaintiff in Wolff did not end up with 67% less damages than were plead as Mr. Massey's client did. In fact, the plaintiff in Wolff ended up with twice as much money than was initially sought, and the Court still reduced the fees requested by 60%. Id. at 1-10. As a result, the Court has ample reasons to make an across the board cut of at least 75% to Mr. Massey's attorney fee request.

The Court can also find that the fees generated were moot as of March 1, 2018, when the undersigned counsel dropped of a check for full damages plead, $195.21, and a letter indicating the willingness to discuss payment of reasonable

attorney's fees.  If the fees stop there Mr. Massey's hours 162.3 hours would be reduced by 108.3 hours for a total of 54 hours. 54 hours times $250 per hour = $13,500 in attorney's fees.

Please also see the Affidavit of Attorney Gary D. Wilson, Esquire attached as Exhibit A.

### III – COSTS

LEA and Mr. Troiano request that the Court find that the Plaintiff's expert fees are not recoverable under FLSA. See Padurjan v. Aventura Limousince & Transp. Serv., Inc., 441 Fed. Appx. 684, 686 (11th Cir. 2011).

### IV - CONCLUSION

FLSA suits are not meant to be a windfall for plaintiff's counsel. Wolff, 2012 WL 5303665 at 4-5.  Also, if this case was not primarily about attorney's fees, why would the offer of full payment of damages been rejected at least four times? The Court can make an additional across the board cut from the lodestar amount of $29,500 or the amount of $76,670 Mr. Massey is requesting or the amount of $68,977.50 for work done until August 24, 2018, which is prior to the Court ordering attorney's fees for the Plaintiff.  LEA and Mr. Troiano request either at least a 75%

reduction from the $68,977.50 or at least a 40% reduction from the $29,500.  The Court can also find that the fees generated were moot as of March 1, 2018, when the undersigned counsel dropped of a check for full damages plead. If the fees stop on March 1, 2018, Mr. Massey would be entitled to $13,500 in attorney's fees.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF electronic delivery or U.S. Mail Delivery to (and all others receiving electronic service) Michael Massey, Massey & Duffy, PPL, 855 East University Ave., Gainesville, FL  32601, on March 29, 2019.

JULIETTE KOVES, ESQ.
Florida Bar Number 963453
jkoves@dsklawgroup.com
Rubern Laboy, Jr.
Florida Bar Number 850381
RLaboy@dsklawgroup.com
de Beaubien, Simmons, Knight
Mantzaris & Neal, LLP
332 North Magnolia Avenue
Post Office Box 87
Orlando, Florida 32802-0087
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
Attorneys for Defendants